```
CARL H. OSAKI        4008-0
Attorney At Law, A Law Corporation
Town Tower #17G
225 Queen Street
Honolulu, Hawaii  96813
Telephone:  (808) 528-4666
carl@chosaki.com
```

Attorney for Plaintiff
LAUREL J. MAU

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF HAWAII

| | | |
|---|---|---|
| LAUREL J. MAU, | ) | CIVIL NO. _____ |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY & COUNTY OF HONOLULU; | ) | |
| KEITH MITSUYOSHI KANESHIRO; | ) | |
| JACOB GEORGE DELAPLANE; | ) | |
| VERNON BRANCO; | ) | |
| MITSUNAGA & ASSOCIATES, INC.; | ) | |
| DENNIS KUNIYUKI MITSUNAGA; | ) | |
| AARON SHUNICHI FUJII; | ) | |
| CHAD MICHAEL McDONALD; | ) | |
| TERRI ANN OTANI; | ) | |
| SHERI JEAN TANAKA; | ) | |
| RUDY ALIVADO; and | ) | |
| DOE DEFENDANTS 1 - 50 | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMPLAINT

Part I: Jurisdiction and Venue

1.  This Court has jurisdiction over Plaintiff Laurel

J. Mau's ("Mau") federal claims under 28 U.S.C. § 1331 and 28

U.S.C. § 1343.

2.     This Court has supplemental jurisdiction over Mau's state law claims under 28 U.S.C. § 1367.

3.     Venue in the United States District Court for the District of Hawaii is proper pursuant to 28 U.S.C. § 1391.

<u>Part II: Parties</u>

4.     Mau was at all times relevant herein, an individual who is domiciled in the District of Hawaii.

5.     Defendant City and County of Honolulu ("City") is a body politic and corporate in perpetual succession, going by the name of City and County of Honolulu.

6.     Defendant Keith Kaneshiro ("Kaneshiro") was at all times relevant herein, an individual who was domiciled in the District of Hawaii; and was the attorney heading the department of the prosecuting attorney of the City and County of Honolulu ("Prosecuting Attorney").

7.     As the Prosecuting Attorney, Kaneshiro had the primary power and duty to "[p]rosecute offenses against the laws of the state under the authority of the attorney general of the state."

8.     Defendant Jacob George Delaplane ("Delaplane") was at all times relevant herein, an individual who was domiciled in the District of Hawaii, and was a deputy prosecuting attorney in the department of the prosecuting attorney of the City and County of Honolulu ("Department of the Prosecuting Attorney").

9.    Defendant Vernon Branco ("Branco") was at all times relevant herein, an individual who was domiciled in the District of Hawaii, and was an investigator in the Department of the Prosecuting Attorney.

10.   Defendant Mitsunaga & Associates, Inc. ("MAI") was at all times relevant herein, an entity incorporated in Hawaii, having its principal place of business in Hawaii.

11.   Defendant Dennis Kuniyuki Mitsunaga ("Mitsunaga") was at all times relevant herein, an individual who was domiciled in the District of Hawaii, and the owner of MAI.

12.   Defendant Terri Ann Otani ("Otani") was at all times relevant herein, an individual who was domiciled in the District of Hawaii; a relative of Mitsunaga; and an employee of MAI.

13.   Defendant Aaron Shunichi Fujii ("Fujii") was at all times relevant herein, an individual who was domiciled in the District of Hawaii, and an employee of MAI.

14.   Defendant Chad Michael McDonald ("McDonald") was at all times relevant herein, an individual who was domiciled in the District of Hawaii, and an employee of MAI.

15.   Defendant Sheri Jean Tanaka ("Tanaka") was at all times relevant herein, an individual who, upon information and belief, was domiciled in Hawaii; and, upon information and belief, may have resided in the State of California at various

times; and was a member of the California State Bar and the Hawaii State Bar.

16.   Defendant Rudy Alivado ("Alivado") was at all times relevant herein, an individual who was domiciled in the District of Hawaii.

17.   Doe Defendants 1-50 are sued herein under fictitious names for the reasons that their true names and identities are presently unknown to Mau except that they are connected in some manner with some or all of the other named defendants.  Mau prays for leave to amend this Complaint to insert their true names, identities, capacities, activities, and/or responsibilities when they are ascertained.

<u>Part III: Background And Underlying Facts</u>

18.   This action arises from the disclosure on June 17, 2022, of previously purposefully and intentionally concealed facts.  Up to that point in time, such facts were unknown to Mau, and were contained in the previously sealed "Indictment," filed June 2, 2022 ("Indictment"), brought by the United States of America, against various individuals, including Kaneshiro, Mitsunaga, Otani, Fujii, and McDonald, and originally captioned as <u>United States of America v. Kaneshiro, et al.</u>, Case No. CR 22-00048-JMS-WRP, United States District Court for the District of Hawaii.

4

19.   The Indictment brought federal felony charges against the defendants named in the Indictment, based on (1) a conspiracy to commit (a) honest services wire fraud, to deprive the City and its citizens of their right to the honest services of Kaneshiro through a quid pro quo bribery scheme, and (b) a federal program bribery, by the giving of things of value with the intent to influence and reward Kaneshiro in connection with transactions of the City, and by Kaneshiro's corrupt acceptance of things of value, intending to be influenced in connection with transactions of the City; and (2) a conspiracy to injure, oppress, threaten, and intimidate Mau in the free exercise and enjoyment of her Constitutional rights, including the right under the Fourth and Fourteenth Amendment to be free from unreasonable seizures by one acting under color of law, and the right to file and properly litigate a federal civil action under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act.

20.   The Indictment was superseded by the "Indictment - First Superseding," filed September 8, 2022 ("Superseding Indictment"), which asserted the federal felony charges in the Indictment against the previously named defendants, and added Tanaka as an additional named defendant, and which made other amendments to the Indictment.   The Indictment and the Superseding Indictment are collectively referred to as the "Indictments."

21.   Among the previously concealed and unknown facts
that the Indictments revealed were a series of written
communications via email and email attachments, between Otani and
Tanaka, on the one hand, and Kaneshiro's executive assistant,
Carol Nakamura ("Nakamura"), and Delaplane, on the other hand.
Upon information and belief, the communications directed to
Nakamura were intended for, and did reach, Kaneshiro.

22.   In addition, the Indictments revealed previously
concealed and unknown facts regarding meetings and telephone
conversations, between Mitsunaga, Otani, and Tanaka, on the one
hand, and Kaneshiro, Nakamura, and Delaplane, on the other hand.

23.   The June 17, 2022 disclosure of previously
concealed and unknown facts illuminated the context of events
that were occurring from the summer of 2012, through December
2014, and which events were orchestrated and driven by Mitsunaga,
Otani, Tanaka, Kaneshiro, with the aid, guidance, and assistance
of others.

24.   Furthermore, the trial of the Indictments in 2024
disclosed further facts previously not known.

25.   In retaliation for Mau's letter reply to Mitsunaga
of November 10, 2011; her pursuit of unemployment benefits
beginning in 2011 after Mau was terminated on account of the
November 10, 2011 reply letter; and for initiating a civil action
against MAI based on, among other grounds, the Age Discrimination

6

in Employment Act and Title VII of the Civil Rights Act, on or about August 22, 2012; MAI, Mitsunaga, Otani, Fujii, McDonald, and Tanaka conspired to formulate, and did formulate a scheme with the purposes to improperly deny unemployment benefits to Mau, and then to intimidate Mau into resolving the civil action on terms favorable to MAI which included having Mau pay monetary compensation to MAI in exchange for an agreement to dismiss the civil action, to corrupt the trial of the civil action by concealing evidence and presenting perjured testimony, and to retaliate against Mau by fomenting and causing the bringing of false criminal felony charges against Mau.

26.  Integral to this conspiracy was recruiting and enlisting  Kaneshiro into the conspiracy in order to result in the criminal felony charges against Mau.

27.  The scheme involved the fabrication of a false narrative that Mau had been terminated for doing "side projects" or "side jobs" on company time and using company resources, which supposedly occupied Mau's work time with non-employment activity and allegedly exposed MAI to claims.

28.  Upon information and belief, MAI, Mitsunaga, Otani, Fujii, McDonald, and Tanaka, and upon information and belief, others, knew that the factual basis for the scheme, which would form the basis of the intended criminal charges against Mau, did not constitute legitimate and true criminal charges, but

7

nevertheless continued to further their scheme to intimidate, retaliate, and injure Mau in this fashion.

29.   In furtherance of this scheme, and to recruit Kaneshiro into the conspiracy, and unknown to Mau and disclosed by events at a trial occurring from late March through May 2024, an overture was made by Otani to Ann Kobayashi for a meeting with Kaneshiro, some time in or about September 2012.

30.   On or about September 28, 2012, Nakamura emailed Otani that Kaneshiro would be happy to meet with Mitsunaga, and Nakamura requested more information.

31.   On or about October 1, 2012, Otani replied to Nakamura's email, and identified a police report on Mau that Fujii had submitted in or about July 2012.  The police had tried to follow up with Fujii on the police report he submitted but were either unsuccessful in follow up communications with Fujii, or were directed to Tanaka when the complainant was Fujii.  The police were not able to obtain further information from Fujii. Upon information and belief, Fujii's conduct in this regard was part of the conspiracy to involve the police but in an insubstantial way.

32.   On or about October 4, 2012, Mitsunaga and Tanaka met with Kaneshiro and Nakamura in order to attempt to persuade Kaneshiro to investigate and prosecute Mau.

33.   On or about October 18, 2012, Tanaka sent Nakamura an email that stated that Tanaka was assembling the information requested by Kaneshiro, including the evidence supporting the police complaint.

34.   On or about October 25, 2012, Mitsunaga, Mitsunaga's spouse, Mitsunaga's business associate, Fujii, and Tanaka, all made monetary contributions to Kaneshiro's re-election campaign.

35.   Between October 2012 and October 2016, Mitsunaga and other employees of MAI, affiliates, sub-contractors, and relatives (collectively "MAI Donors") contributed over $45,000 to Kaneshiro's re-election campaigns.  Prior to the contributions made in October 2012, the MAI Donors had no known contributions to Kaneshiro.

36.   On or about October 29, 2012, Nakamura emailed Otani stating that Kaneshiro wanted to speak with Mitsunaga. Otani replied to Nakamura, providing Mitsunaga's cellular phone number for Kaneshiro to call.  That same day, Kaneshiro called Mitsunaga.

37.   Upon information and belief, by around early November 2012, Kaneshiro agreed to use the Department of the Prosecuting Attorney to pursue felony criminal charges against Mau, thereby joining the conspiracy.  At or around that time,

Kaneshiro informed some or all of his co-conspirators of the start of an investigation into Mau.

38. In or about the latter part of 2012, Kaneshiro, pursuant to his prerogative as the administrative head of the Department of the Prosecuting Attorney, instructed his media spokesperson, Darren Koga ("Koga"), to relay a direction to the head of the white collar crime unit, Christopher Van Marter ("Van Marter"), to prosecute Mau for theft.

39. Koga falsely relayed word from Kaneshiro to Van Marter that Mau had admitted to the theft.

40. Van Marter asked if there was a police investigation, and Koga replied in the negative. Koga informed Van Marter that the purported victim of the theft was involved in a civil action with Mau, as a defendant, and that the civil attorney for MAI had investigated the purported theft.

41. Van Marter declined to forego a police investigation before charging Mau with a crime, in the context where MAI was a defendant in a civil action brought by Mau and where MAI and its attorney were investigating the basis of a criminal charge in lieu of a police investigation. Van Marter refused to charge Mau with a crime under those circumstances.

42. In response, Kaneshiro, pursuant to his prerogative as the administrative head of the Department of the Prosecuting Attorney, selected another senior deputy prosecuting

10

attorney, Dwight Nadamoto ("Nadamoto") to lead an internal investigation into the basis of criminal charges against Mau, as well as an investigator in the Department of the Prosecuting Attorney, Kalfred Wong ("Wong").  The selection of Nadamoto and Wong were not pursuant to the usual method of case assignments in the Department of the Prosecuting Attorney, which usually followed a chain of command in assigning cases to deputy prosecuting attorneys.

43.  In exercising his prerogative as the administrative head of the Department of the Prosecuting Attorney in assigning the Mau case to selected deputy prosecutors, Kaneshiro was able to keep control over the Mau file, and to avoid a police investigation into facts and circumstances raised by Mitsunaga, Otani, and Tanaka directly to him, and to confine the investigation to information presented by them and to efforts completely within the Department of the Prosecuting Attorney.

44.  On or about January 22, 2013, Tanaka provided a document to Nadamoto addressing criminal charges against Mau.

45.  On or about January 24, 2013, Mitsunaga, Tanaka, Kaneshiro, and Nakamura met for lunch and discussed the investigation and prosecution of Mau.

46.  On or about January 28, 2013, Tanaka sent Nakamura an email expressing her gladness that Kaneshiro and Nakamura could join them for lunch; observing how alike Kaneshiro and

11

Mitsunaga were; and stating that Mitsunaga and Tanaka looked forward to their next get together with Kaneshiro.

47.   On or about February 20, 2013, Tanaka send Nakamura an email informing that Tanaka would be meeting with the police on February 21, 2013, and that Tanaka would provide a supplemental report to Kaneshiro by February 27, 2013.

48.   On or about February 27, 2013, Tanaka provided Nadamoto with another letter regarding criminal charges against Mau.

49.   In or about late September 2013, Mau became aware that Wong was interviewing persons about alleged "side work."

50.   On or about November 25, 2013, Tanaka emailed Nakamura requesting a meeting for the next morning.   After several email exchanges, an agreement was reached to meet during the morning of November 26, 2013.

51.   Upon information and belief, Tanaka delivered something to Nakamura on or about November 26, 2013, and according to Nakamura, it was not food.

52.   On or about December 16, 2013, Mau served discovery requests in the civil action against MAI which requested MAI to disclose documents and information provided to the Department of the Prosecuting Attorney.

53.   On behalf of MAI, Tanaka stonewalled, obfuscated, and lied in the civil action in order to rebuff the discovery requests and to not disclose pertinent information and documents.

54.   On or about January 9, 2014, Otani emailed Nakamura, asking for a meeting between Mitsunaga and Kaneshiro for later in January 2014.

55.   On or about March 11, 2014, Tanaka and Kaneshiro had communications which coordinated the effort to keep concealed the full extent of the communications between MAI, Otani, Mitsunaga, and Tanaka, on the one hand, and Kaneshiro, Nakamura, and Nadamoto, on the other hand.

56.   Nadamoto and Wong's investigation resulted in a 14-page memorandum by Nadamoto to Kaneshiro, explaining why criminal charges should not be brought against Mau.

57.   According to Nadamoto, when Tanaka learned of Nadamoto's analysis and conclusions, Tanaka was not pleased; the conspiracy continued to move forward.

58.   At the civil trial in July 2014, the conspiracy continued as Tanaka suborned perjured testimony from Alivado regarding a false accusation of theft by Mau.  In the 2024 criminal trial, Alivado admitted that he gave perjured testimony in the 2014 civil trial at the behest of Tanaka because he had wanted to help his friend Mitsunaga.

13

59.   By agreeing to, and giving, perjured testimony in the 2014 civil trial, Alivado made himself a part of the conspiracy to retaliate and injure, Mau and to corrupt and thwart Mau's exercise of her federal rights.

60.   In or about August 7, 2014, as part of the conspiracy to retaliate and injure Mau, Otani emailed a complaint to the Tax Division of the Hawaii Attorney General's Office, falsely alleging that Mau had committed tax fraud.

61.   Otani's tax complaint resulted in an investigation of Mau by the Tax Division, but with no adverse action against Mau.

62.   In response to Nadamoto's analysis of why criminal charges were not warranted against Mau, Kaneshiro, pursuant to his prerogative as the administrative head of the Department of the Prosecuting Attorney, selected another deputy prosecuting attorney who had only recently joined the Department of the Prosecuting Attorney, Delaplane, to bring criminal charges against Mau.

63.   Kaneshiro directed Delaplane to work with Tanaka in investigating the factual basis for criminal charges, which instructions Delaplane followed.

64.   On or about August 28, 2014, Tanaka emailed Delaplane about Mau, attaching transcripts from the civil trial.

14

65.  In or about late September or early October 2014, Tanaka met with Delaplane, possibly with Otani, about Mau.

66.  On or about October 23, 2014, Tanaka emailed Delaplane and, upon information and belief, falsely alleged that Mau had kept money from Alivado which should have gone to MAI. Tanaka provided Delaplane with false sworn statements of McDonald and Otani regarding the purported instances of theft allegedly committed by Mau, as part of the investigation.

67.  Delaplane has stated that he was not aware at the time of the internal investigation that Mau had sued MAI in a civil action.

68.  Delaplane has stated that he was not aware at the time of the internal investigation of the monetary contributions to Kaneshiro's campaign by the MAI Donors.

69.  Delaplane has stated that had he been aware of the facts in the foregoing two paragraphs, above, at the time of the internal investigation, he would have advised Kaneshiro that the Department of the Prosecuting Attorney should recuse itself from any investigation and potential prosecution of Mau.

70.  Thus, Kaneshiro withheld material information from Delaplane during the internal investigation of the factual basis of criminal charges against Mau, and manipulated the internal investigation to make it more likely that Delaplane would pursue criminal charges against Mau.

15

71.   Delaplane conducted the internal investigation on the foundation that Mau was a career criminal.  Mau does not, and did not, satisfy the statutory definition of a career criminal.

72.   Delaplane relied primarily on materials and information provided to him by Tanaka.  Delaplane did not utilize any investigator in the Department of the Prosecuting Attorney, and did not involve the police in the investigation.

73.   Delaplane did not interview Alivado, whose perjured testimony in the 2014 civil action was material to the criminal charges that Delaplane would bring against Mau.

74.   In late November 2014, Delaplane attempted to have a state court judge sign off on an information charging Mau with felonies, but the judge refused to sign the information because it lacked the support of a law enforcement affidavit.

75.   When Delaplane reported the rejection of the information to Kaneshiro, Kaneshiro assigned Branco, an investigator in the Department of the Prosecuting Attorney, to cure the deficiency in the information.

76.   Branco did not conduct an investigation.  Branco did not interview Alivado.  Branco sat with Delaplane and Delaplane prepared a statement for Branco to sign.  Branco signed a sworn statement that he had conducted an investigation, in order to cure the deficiency identified by the state court judge.

77.   On or about December 1, 2014, Delaplane filed a felony information against Mau in the Circuit Court for the First Circuit, State of Hawaii, alleging four counts of second degree theft under Hawaii law.

78.   In or about December 2014, Mau was arraigned on the felony information, and conditions of release were set pending trial, including travel restrictions and a $20,000 cash bond.

79.   Mau retained criminal defense counsel at a cost of about $48,000.

80.   In or about January 2016, Mau was offered a job with the Naval Facilities Engineering Systems Command ("NAVFAC") in Monterey, California.  However, when NAVFAC learned of the criminal prosecution, the job offer was rescinded.

81.   The criminal prosecution of Mau continued until September 15, 2017, when a written order was entered that dismissed the criminal charges against Mau with prejudice, the state court finding that there was no probable cause.

<u>Part IV: Claims</u>

<u>First Claim: 42 U.S.C. § 1983</u>

82.   Mau realleges and repeats paragraphs 1 through 81, above, as if fully set forth herein.

83.   Mitsunaga, Otani, Tanaka, Fujii, and McDonald (collectively "MAI Defendants"), Kaneshiro, Delaplane, and Branco

17

("City Defendants") at all time relevant herein acted under color of state law.

84.   The MAI Defendants and the City Defendants conspired to usurp police investigation into alleged crimes and to conduct the investigation themselves, and to manipulate the assignment of the Mau matter within the Department of the Prosecuting Attorney, which resulted in the bringing of false felony criminal charges against Mau in violation of Mau's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution, and to deprive Mau of due process under the Fourteenth Amendment to the United States Constitution.

85.   In furtherance of the aim of the conspiracy, the MAI Defendants and the City Defendants assembled the evidence to support the criminal charges without involving the police or any other independent law enforcement agency.

86.   Material portions of the evidence assembled by the MAI Defendants and the City Defendants were manufactured and false.

87.   Kaneshiro rejected advice to have the police investigate the criminal complaint against Mau, and was aware of this alternative which is the standard procedure of an investigation into alleged criminal conduct.   Instead, Kaneshiro established City policy in directing reliance on evidence

18

assembled and presented by the purported victim of the alleged criminal conduct.

88. In furtherance of the aim of the conspiracy, Kaneshiro used his administrative powers to assign and re-assign the Mau matter to multiple deputy prosecutors until he found one willing to follow his instructions as to the process which would result in the filing of criminal charges against Mau. Kaneshiro established City policy in assigning the Mau matter to multiple deputy prosecutors until he found one who would follow his instructions in this regard.

89. As the final decision maker in the Department of the Prosecuting Attorney, Kaneshiro established City policy with regard to the internal investigation of the Mau matter to the exclusion of an investigation by a law enforcement agency, and the selection of the deputy prosecutor of the Mau matter.

90. The internal investigation of the Mau matter and the selection of the deputy prosecutor of the Mau matter directly lead to the bringing of false criminal charges against Mau which violated her right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution, and her right to due process under the Fourteenth Amendment to the United States Constitution.

91.   As a proximate result, Mau has been damaged in an amount to be proven, including but not limited to compensatory and punitive damages.

92.   Mau is entitled to an award of reasonable attorneys' fees.

### Second Claim: Malicious Prosecution

93.   Mau realleges and repeats paragraphs 1 through 92, above, as if fully set forth herein.

94.   Kaneshiro and Delaplane had a duty to bring only meritorious and righteous criminal charges.

95.   The criminal charges brought against Mau were brought without probable cause.

96.   Delaplane admits that the information brought against Mau lacked probable cause.  The memorandum authored by Nadamoto also establishes that the information brought against Mau lacked probable cause. Van Marter's refusal to bring criminal charges against Mau without a police investigation and within the context of the purported victim doing the investigation when the purported victim was a defendant in a civil action brought by Mau, establishes that the information brought against Mau lacked probable cause.

97.   The criminal charges brought against Mau were motivated by an improper purpose; that is, to further the

conspiracy to charge Mau with a crime as part of the effort to intimidate, retaliate, and injure Mau.

98.   Kaneshiro knew that the factual underpinnings of the criminal charges were not meritorious because he knew or should have known that such facts could not even support a finding that Mau was not entitled to unemployment benefits.

99.   Kaneshiro knew that the factual underpinnings of the criminal charges were not meritorious because Van Marter advised him that no criminal charges should be brought against Mau without being preceded by a proper police investigation, in the circumstances where the purported victim was a defendant in a civil action brought by Mau.

100. Kaneshiro knew that the factual underpinnings of the criminal charges were not meritorious because he obviated the standard police investigation in lieu of reliance on evidence presented by the purported victim, which was the defendant in a civil action brought by Mau.

101. Kaneshiro knew that the factual underpinnings of the criminal charges were not meritorious because he was advised by Nadamoto that Mau had committed no crime and should not be charged.

102. Kaneshiro knew that the factual underpinnings of the criminal charges were not meritorious because he joined a conspiracy with the MAI Defendants in which its aim did not

depend on the legitimacy and accuracy of any investigation into
Mau.

103. Despite the foregoing, Kaneshiro directed that the
internal investigation should rely on the materials assembled and
presented by the purported victim, which resulted in the bringing
of improper criminal charges against Mau, which were not
supported by probable cause.

104. The information charging Mau with four counts of
felony theft was not supported by probable cause.

105. The criminal proceedings were terminated in Mau's
favor.

106. The information was brought with malice, evidenced
by, among other things, (a) joining in a conspiracy which aim was
to intimidate, retaliate, and injure Mau, without regard to
standard investigatory processes by the police and internal
handling of cases; (b) reliance on the presentation of evidence
by the purported victim of the alleged crime, to the exclusion of
a police or independent law enforcement investigation; ( c)
rejection of advice from a senior deputy prosecutor to have the
police conduct an investigation prior to charging any crime,
especially in circumstances where the purported victim was also a
defendant in a civil action brought by the alleged perpetrator
and the contact person for the purported victim was the purported
victim's civil attorney; (d) rejection of advice from another

senior deputy prosecutor contained in a written memorandum that evaluated the evidence found by an investigator from the Department of the Prosecuting Attorney and analyzed such evidence against the legal framework of the alleged crimes and concluded that there was no criminal conduct to be charged; (e) assigning and re-assigning of the Mau matter until a junior deputy prosecutor was assigned who agreed to pursue the matter without a police investigation, relying on the purported victim to provide the evidence purportedly supporting the information; (f) foregoing charging Mau by way of indictment or arrest/probable cause hearing; and (g) having an investigator improperly sign a law enforcement affidavit to support the information when the investigator did not participate in the investigation.

107. As a result, Mau has been damaged in an amount to be proven, including but not limited to compensatory and punitive damages.

### Third Claim: Fraudulent Concealment

108. Mau realleges and repeats paragraphs 1 through 107, above, as if fully set forth herein.

109. MAI had a duty and obligation to disclose the written communications with the Department of the Prosecuting Attorney and information regarding those communications in response to the discovery requests in the civil action.

110. Instead, MAI improperly concealed, and kept concealed, the written communications and information and their existence from Mau in the civil action.

111. The improper concealment of the written communications and information materially prejudiced Mau in the civil action because the improper concealment deprived Mau of evidence of retaliation, and an effort to cover-up that retaliation, as well as evidentiary leads to further investigation and discovery of relevant evidence of retaliation and cover-up.

112. The existence of the written communications and information were not known until June 17, 2022, and later.

113. MAI had a duty and obligation to conduct the trial in the civil action in good faith and to abide by procedural rules and substantive law in presenting truthful evidence.

114. Instead, MAI coached Alivado to provide false testimony regarding money he intended for Mau; and instead, to falsely testify that the money was intended for MAI, and further concealed, and kept concealed, this perjured testimony from Mau in the civil action and beyond.

115. The improper concealment of Alivado's perjured testimony  materially prejudiced Mau in the civil action because the improper concealment deprived Mau of evidence of retaliation, and an effort to cover-up that retaliation, as well as

24

evidentiary leads to further investigation and discovery of relevant evidence of retaliation and cover-up.

116. The existence of Alivado's perjured testimony was not known until 2024.

117. The fraudulent concealment of the written communications and information and Alivado's perjured testimony was material because their disclosures would have changed the outcome of the civil trial.

118. The fraudulent concealment of the written communications and information and Alivado's perjured testimony caused damages to Mau in an amount to be proven, including but not limited to compensatory and punitive damages.

WHEREFORE, Mau prays that judgment be entered against the named defendants, and each of them, as follows:

A.    That Mau be awarded compensatory and punitive damages in amounts to be proven;

B.    For attorneys' fees and costs in an amount to be proven; and

C.    For all other relief that this court may deem just and proper.

DATED:    Honolulu, Hawaii    June 14, 2024.

/s/ Carl H. Osaki
CARL H. OSAKI
Attorney for Plaintiff
LAUREL J. MAU

25