UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREL J. MAU, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>CITY & COUNTY OF HONOLULU;<br>KEITH MITSUYOSHI PROSECUTOR<br>KANESHIRO; JACOB GEORGE<br>DELAPLANE; VERNON BRANCO;<br>MITSUNAGA & ASSOCIATES, INC.;<br>DENNIS KUNIYUKI MITSUNAGA;<br>AARON SHUNICHI FUJII; CHAD<br>MICHAEL MCDONALD; TERRI ANN<br>OTANI; SHERI JEAN TANAKA; RUDY<br>ALIVADO; and DOE DEFENDANTS 1 -<br>50, inclusive,<br><br>                              Defendants. | Case No.:  24cv0253-GPC(WRP)<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTIONS TO DISMISS WITH<br>LEAVE TO AMEND AND<br>GRANTING IN PART AND<br>DENYING IN PART DEFENDANT<br>CITY'S MOTION FOR JUDGMENT<br>ON THE PLEADINGS WITH LEAVE<br>TO AMEND**<br><br>**[Dkt. Nos. 58, 71, 72, 79, 86.]** |

Before the Court are the fully briefed motions of (1) Defendant Sheri Jean Tanaka's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), or alternatively Rule 12(b)(5), (Dkt. Nos. 58, 82, 83, 91); (2) Defendant Mitsunaga & Associates, Inc.'s motion to dismiss pursuant to Rule 12(b)(1), and 12(b)(6), (Dkt. Nos. 71, 93, 99); (3) Defendant Chad Michael McDonald's

1

motion to dismiss pursuant to Rule 12(b)(1)[1] and 12(b)(6), (Dkt. Nos. 72, 95, 100); (4) Defendants Dennis Kuniyuki Mitsunaga and Aaron Shunichi Fujii's substantive joinder in Mitsunaga & Associates, Inc.'s motion to dismiss, (Dkt. Nos. 79, 94, 102); and (5) Defendant City and County of Honolulu's motion for judgment on the pleadings, (Dkt. Nos. 86, 97, 101).  A hearing was held on February 18, 2025.  (Dkt. No. 108.)  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss with leave to amend and GRANTS in part and DENIES in part Defendant City and County of Honolulu's motion for judgment on the pleadings with leave to amend.

## Procedural Background

On June 14, 2024, Plaintiff Laurel Mau ("Plaintiff" or "Mau") filed a 42 U.S.C. § 1983 ("§ 1983 or "section 1983") civil rights complaint against Defendants City & County of Honolulu ("City"); Keith Mitsuyoshi Kaneshiro, Prosecuting Attorney for the City and County of Honolulu, ("Prosecutor Kaneshiro "); Jacob George Delaplane, Deputy Prosecuting Attorney for the City and County of Honolulu, ("Deputy Prosecutor Delaplane"); Vernon Branco, Investigator for the Department of the Prosecuting

---

[1] McDonald and MAI seek dismissal based on Rule 12(b)(1) for lack of subject matter jurisdiction arguing that because the § 1983 must be dismissed, the Court lacks subject matter jurisdiction over them and should therefore decline supplemental jurisdiction over the state law claims.  (Dkt. No. 71-1 at 14; Dkt. No. 72 at 10, 15.)  Their arguments are misplaced.  The United States Supreme Court explained that "[s]ubject matter jurisdiction defines the court's authority to hear a given type of case[.]" *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)).  Thus, the Court has subject matter jurisdiction over a cause of action, not over parties.  *See e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006) ("'Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination.'"); *Bell v. Hood*, 327 U.S. 678, 682 (1946) (stating that "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").  Therefore, even by dismissing the first cause of action against MAI or McDonald, the Court still retains subject matter jurisdiction because the § 1983 claim remains against Defendants Prosecutor Kaneshiro, Deputy Prosecutor Delaplane, Investigator Branco, and Otani.  *See* 28 U.S.C. § 1367(c) (the Court may decline supplemental jurisdiction over the state law claims when it has "dismissed all claims over which it has original jurisdiction[.]").  Therefore, Defendants do not properly raise a Rule 12(b)(1) challenge.

Attorney, ("Investigator Branco") (collectively "City Defendants"); and Defendants Mitsunaga & Associates, Inc. ("MAI"); Dennis Kuniyuki Mitsunaga, the owner of MAI, ("Mitsunaga"); Terri Ann Otani, an employee of MAI ("Otani"); Aaron Sunichi Fujii, an employee of MAI, ("Fujii"); Chad Michael McDonald, an employee of MAI, ("McDonald"); Sheri Jean Tanaka, attorney for MAI, ("Tanaka"); and Rudy Alivado, friend of Mitsunaga, ("Alivado") (collectively "MAI Defendants").  (Dkt. No. 1, Compl.)

On November 12, 2024, Defendant Alivado filed an answer.  (Dkt. No. 52.)  On November 14, 2024, Defendant City filed an answer.  (Dkt. No. 54.)  Defendant Deputy Prosecutor Delaplane filed an answer on November 21, 2024.  (Dkt. No. 64.)  Entry of default was entered against Defendant Investigator Branco on November 20, 2024, (Dkt. No. 63), against Defendant Otani on November 29, 2024, (Dkt. No. 67), and against Defendant Prosecutor Kaneshiro on December 4, 2024, (Dkt. No. 70).  Defendants MAI, Mitsunaga, Fujii, McDonald and Tanaka filed motions to dismiss which are fully briefed. The City also filed a motion for judgment on the pleadings.  On February 18, 2025, a hearing was held on the pending motions and additional briefing was requested by the Court on when the § 1983 claim accrued, (Dkt. No. 108).  All Defendants filed their supplemental briefs on March 4, 2025.  (Dkt. Nos. 109, 110, 111, 112, 114, 115.)

### Factual Background

According to the complaint, Mau alleges that MAI Defendants amongst themselves and in connection with City Defendants conspired to retaliate against Mau[2] for "her letter reply to Mitsunaga of November 10, 2011, her pursuit of unemployment benefits beginning in 2011 after Mau was terminated on account of the November 10, 2011 reply letter; and for initiating a civil action against MAI based on, among others grounds, the Age Discrimination in Employment Act and Title VII of the Civil Rights Act, on or about August 22, 2012", ("2012 Employment Civil Action").  (Dkt. No. 1, Compl. ¶¶ 25, 26,

---

[2] While not expressed, the Court gathers that Mau was a former employee of MAI.

59.)  Mau claims that the scheme involved the fabrication of a false narrative that she had been terminated for doing "side projects" on company time, kept money that should have gone to MAI, used company resources, and allegedly exposed MAI to claims.  (*Id.* ¶¶ 27, 66.)  She claims MAI, Mitsunaga, Otani, Fujii, McDonald, and Tanaka knew the factual bases of the scheme were not legitimate and not criminal but pursued the scheme to criminally prosecute her in order to intimidate, retaliate and injure her.  (*Id.* ¶ 28.)

As a result of this conspiracy, around December 1, 2014, a felony information was filed against Mau in the Circuit Court for the First Circuit, State of Hawaii, alleging four counts of second-degree theft under Hawaii law ("2014 State Criminal Case").  (*Id.* ¶ 77.)  Mau was arraigned on the felony information, and conditions of release were set pending trial, including travel restrictions and a $20,000 cash bond.  (*Id.* ¶ 78.)  Ultimately, the case was dismissed with prejudice on September 15, 2017 when the state court found there was no probable cause.  (*Id.* ¶ 81.)

Mau alleges she learned the facts supporting her causes of action on June 17, 2022 when the indictment in the case of *United States v. Prosecutor Kaneshiro et al.*, Case No. CR 22-00048-JMS-WRP, United States District Court for the District of Hawaii ("2022 Federal Criminal Case") was unsealed.  (*Id.* ¶ 18.)  In that case, the United States brought a criminal case against Defendants Prosecutor Kaneshiro, Mitsunaga, Otani, Fujii, McDonald and Tanaka for conspiracy to commit honest services wire fraud, conspiracy to commit a federal program bribery, and a conspiracy to injure, oppress, threaten and intimidate Mau in the free exercise and enjoyment of her constitutional rights, including the right to be free from unreasonable seizures under the Fourth and Fourteenth Amendment and the right to file a federal civil action under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act.  (*Id.* ¶¶ 18-20.)  Plaintiff claims that when the indictment was unsealed on June 17, 2022, she learned about the facts regarding the conspiracy scheme that "illuminated the context of events" from the summer of 2012 through December 2014.  (*Id.* ¶ 23.)

/ / /

## A.    Initiation of the Scheme

The conspiracy scheme was initiated by a proposal by Otani, a MAI employee, to Ann Kobayashi for a meeting with Prosecutor Kaneshiro in September 2012.  (*Id.* ¶¶ 12, 29.)  Around September 28, 2012, Carol Nakamura ("Nakamura"), Prosecutor Kaneshiro's executive assistant, emailed Otani that Prosecutor Kaneshiro would be happy to meet with Mitsunaga and also requested more information.  (*Id.* ¶ 30.)  Otani responded around October 1, 2012, and identified a police report on Mau that Fujii, a MAI employee, had submitted in July 2012.  (*Id.* ¶¶ 13, 31.)  The police had tried to follow up with Fujii about the police report but was not able to obtain further information from him; nonetheless, Fujii's conduct was part of the conspiracy to involve the police "in an insubstantial way."  (*Id.*)

Around October 4, 2012, Mitsunaga and Tanaka, MAI's attorney, met with Prosecutor Kaneshiro and Nakamura in order to attempt to persuade Prosecutor Kaneshiro to investigate and prosecute Mau.  (*Id.* ¶ 32.)  On or about October 18, 2012, Tanaka sent Nakamura an email stating she was assembling the information requested by Prosecutor Kaneshiro, including the evidence supporting the police complaint.  (*Id.* ¶ 33.)

On or about October 25, 2012, Mitsunaga, his spouse, Mitsunaga's business associates, Fujii, and Tanaka made monetary contributions to Prosecutor Kaneshiro's reelection campaign.  (*Id.* ¶ 34.)  Between October 2012 and October 2016, Mitsunaga and other employees of MAI, affiliates, sub-contractors, and relatives ("MAI Donors") contributed over $45,000 to Prosecutor Kaneshiro's re-election campaign.  (*Id.* ¶ 35.)  Prior to the contributions made in October 2012, these MAI Donors had no known contributions to Prosecutor Kaneshiro.  (*Id.*)

On or about October 29, 2012, when Nakamura emailed Otani stating that Prosecutor Kaneshiro wanted to speak with Mitsunaga, Otani provided Mitsunaga's cellular phone number, and on that same day Prosecutor Kaneshiro called Mitsunaga.  (*Id.* ¶ 36.)

/ / /

**B.    Conspiracy Scheme**

Upon information and belief, by around early November 2012, Prosecutor Kaneshiro agreed to use the Department of the Prosecuting Attorney ("DPA") to pursue felony criminal charges against Mau, thereby joining the conspiracy.  (*Id.* ¶ 37.)  In late 2012, Prosecutor Kaneshiro instructed his media spokesperson Darren Koga ("Koga") to direct the head of the white collar crime unit Christopher Van Marter ("Van Marter") to prosecute Mau for theft, with Koga falsely telling Van Marter that Mau had admitted to the theft.  (*Id.* ¶¶ 38, 39.)  When Van Marter asked if there was a police investigation, Koga replied in the negative.  (*Id.* ¶ 40.)  Koga explained to Van Marter that the purported victim of the theft was involved in a civil action with Mau, as a defendant, and that the civil attorney for MAI had investigated the purported theft.  (*Id.* ¶ 40.)  Van Marter refused to charge Mau without a police investigation.  (*Id.* ¶ 41.)

Prosecutor Kaneshiro then selected another senior deputy prosecuting attorney, Dwight Nadamoto ("Deputy Prosecutor Nadamoto") and Investigator Kalfred Wong ("Investigator Wong") to lead an internal investigation into the basis of criminal charges against Mau.  (*Id.* ¶ 42.)  The selection of Deputy Prosecutor Nadamoto and Investigator Wong was not conducted pursuant to the normal procedure of case assignments in the DPA, which usually followed a chain of command in assigning cases to deputy prosecuting attorneys.  (*Id.*)  In assigning the Mau case to selected deputy prosecutors, Prosecutor Kaneshiro was able to keep control over the Mau file, and to avoid a police investigation into facts and circumstances raised by Mitsunaga, Otani, and Tanaka, and to confine the investigation to information presented by them within the DPA.  (*Id.* ¶ 43.)  Around January 22, 2013, Tanaka provided a document to Deputy Prosecutor Nadamoto addressing criminal charges against Mau.  (*Id.* ¶ 44.)

On or about January 24, 2013, Mitsunaga, Tanaka, Prosecutor Kaneshiro, and Nakamura met for lunch and discussed the investigation and prosecution of Mau.  (*Id.* ¶ 45.)  A few days later, Tanaka sent Nakamura an email expressing her happiness that Prosecutor Kaneshiro and Nakamura could join them for lunch.  (*Id.* ¶ 46.)

Around February 20, 2013, Tanaka sent Nakamura an email informing that she would be meeting with the police on February 21, 2013, and that Tanaka would provide a supplemental report to Prosecutor Kaneshiro by February 27, 2013.  (*Id.* ¶ 47.)  On or about February 27, 2013, Tanaka provided Deputy Prosecutor Nadamoto with another letter regarding criminal charges against Mau.  (*Id.* ¶ 48.)  In late September 2013, Mau became aware that Investigator Wong was interviewing persons about alleged "side work."  (*Id.* ¶ 49.)  On or about November 25, 2013, Tanaka emailed Nakamura requesting a meeting for the next morning.  (*Id.* ¶ 50.)  Tanaka and Nakamura met on the morning of November 26, 2013, and upon information and belief, Tanaka delivered something to Nakamura, and according to Nakamura, it was not food.  (*Id.* ¶ 51.)

On or about December 16, 2013, Mau served discovery requests in her 2012 Employment Civil Action against MAI seeking the disclosure of documents and information it provided to the Department of the Prosecuting Attorney.  (*Id.* ¶ 52.)  On behalf of MAI, Tanaka stonewalled, obfuscated, and lied in the civil action in order to not disclose relevant information and documents.  (*Id.* ¶ 53.)  Around January 9, 2014, Otani emailed Nakamura asking for a meeting between Mitsunaga and Prosecutor Kaneshiro for later in January 2014.  (*Id.* ¶ 54.)  Around March 11, 2014, Tanaka and Prosecutor Kaneshiro had communications which coordinated the effort to keep concealed the full extent of the communications between MAI, Otani, Mitsunaga, and Tanaka, on the one hand, and Prosecutor Kaneshiro, Nakamura, and Deputy Prosecutor Nadamoto, on the other hand.  (*Id.* ¶ 55.)

Deputy Prosecutor Nadamoto and Investigator Wong's investigation resulted in a 14-page memorandum to Prosecutor Kaneshiro explaining why criminal charges should not be brought against Mau.  (*Id.* ¶ 56.)  According to Deputy Prosecutor Nadamoto, when Tanaka learned of his analysis and conclusions, Tanaka was not pleased; yet, the conspiracy continued to move forward.  (*Id.* ¶ 57.)

In July 2014, during the 2012 Employment Civil Action, the conspiracy continued as Tanaka suborned perjured testimony from Alivado falsely accusing Mau of theft.  (*Id.*

¶ 58.)  The perjured testimony was revealed at the trial for the 2022 Federal Criminal Case, when Alivado admitted that he gave perjured testimony in the 2012 Employment Civil Action at Tanaka's request because he had wanted to help his friend Mitsunaga. (*Id.*)  By agreeing to, and giving perjured testimony during the trial of the 2012 Employment Civil Action, Alivado made himself a part of the conspiracy to retaliate and injure Mau and to corrupt and thwart the exercise of her federal rights.  (*Id.* ¶ 59.)

Around August 7, 2014, as part of the conspiracy to retaliate and injure Mau, Otani emailed a complaint to the Tax Division of the Hawaii Attorney General's Office falsely alleging that Mau had committed tax fraud.  (*Id.* ¶ 60.)  Mau was investigated by the Tax Division, but there was no adverse action.  (*Id.* ¶ 61.)

In response to Deputy Prosecutor Nadamoto's analysis as to why criminal charges were not warranted against Mau, Prosecutor Kaneshiro selected Deputy Prosecutor Delaplane, who had only recently joined the DPA, to bring criminal charges against Mau. (*Id.* ¶ 62.)  Prosecutor Kaneshiro directed Deputy Prosecutor Delaplane to work with Tanaka to investigate the factual bases for criminal charges.  (*Id.* ¶ 63.)  Around August 28, 2014, Tanaka emailed Deputy Prosecutor Delaplane about Mau, attaching transcripts from the trial of the 2012 Civil Employment Action.  (*Id.* ¶ 64.)  In late September 2014, or early October 2014, Tanaka met with Deputy Prosecutor Delaplane, possibly with Otani, about Mau.  (*Id.* ¶ 65.)  On or about October 23, 2014, Tanaka emailed Deputy Prosecutor Delaplane and, upon information and belief, falsely alleged that Mau had kept money from Alivado which should have gone to MAI.  (*Id.* ¶ 66.)  As part of the investigation, Tanaka provided Deputy Prosecutor Delaplane with false sworn statements of McDonald and Otani regarding the purported theft allegedly committed by Mau.  (*Id.* ¶ 66.)  Deputy Prosecutor Delaplane stated that he was not aware at the time of the internal investigation that Mau had sued MAI in a civil action and that monetary contributions to Prosecutor Kaneshiro's campaign were made by the MAI Donors.  (*Id.* ¶¶ 67-68.)  Deputy Prosecutor Delaplane asserted that had he been aware of these two facts at that time, he would have advised Prosecutor Kaneshiro that the DPA should recuse itself from

any investigation and prosecution of Mau. (*Id.* ¶ 69.) Thus, Prosecutor Kaneshiro withheld material information from Deputy Prosecutor Delaplane during the internal investigation of the factual bases of criminal charges against Mau, and manipulated the internal investigation to make it more likely that Deputy Prosecutor Delaplane would pursue criminal charges against Mau. (*Id.* ¶ 70.)

Deputy Prosecutor Delaplane conducted an internal investigation based on the belief that Mau was a career criminal even though she did not satisfy the definition of a career criminal. (*Id.* ¶ 71.) He relied primarily on materials and information provided to him by Tanaka. (*Id.* ¶ 72.) He did not use any investigator in the DPA, and did not involve the police in the investigation. (*Id.*) He did not interview Alivado, whose perjured testimony in the 2012 Employment Civil Action was material to the criminal charges that Deputy Prosecutor Delaplane would bring against Mau. (*Id.* ¶ 73.) In late November 2014, Deputy Prosecutor Delaplane attempted to have a state court judge sign off on an information charging Mau with felonies, but the judge refused to sign the information because it lacked the support of a law enforcement affidavit. (*Id.* ¶ 74.) When Deputy Prosecutor Delaplane reported the rejection of the information to Prosecutor Kaneshiro, he assigned Investigator Branco to cure the deficiency in the information. (*Id.* ¶ 75.) Investigator Branco did not conduct an investigation and did not interview Alivado. (*Id.* ¶ 76.) Instead, Investigator Branco sat with Deputy Prosecutor Delaplane while he prepared a statement for Investigator Branco to sign. (*Id.*) Investigator Branco signed a sworn statement that he had conducted an investigation in order to cure the deficiency identified by the state court judge. (*Id.*) Around December 1, 2014, Deputy Prosecutor Delaplane filed a felony information against Mau in the Circuit Court for the First Circuit, State of Hawaii, alleging four counts of second degree theft under Hawaii law. (*Id.* ¶ 77.)

In January 2016, Mau was offered a job with the Naval Facilities Engineering Systems Command ("NAVFAC") in Monterey, California. (*Id.* ¶ 80.) However, when NAVFAC learned of the criminal prosecution, the job offer was rescinded. (*Id.*) On

September 15, 2017, the criminal case was dismissed with prejudice as the state court found there was no probable cause. (*Id.* ¶ 81.)

Plaintiff brings three causes of action against Defendants. First, Plaintiff alleges MAI Defendants (Mitsunaga, Otani, Tanaka, Fujii, and McDonald) and the City Defendants (Prosecutor Kaneshiro, Deputy Prosecutor Delaplane and Investigator Branco) violated her Fourth and Fourteenth Amendment right to be free from an unreasonable seizure and deprived her due process rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (*Id.* ¶¶ 82-92.) Second, she alleges a malicious prosecution claim against Prosecutor Kaneshiro and Deputy Prosecutor Delaplane. (*Id.* ¶¶ 93-107.) Third, she alleges a fraudulent concealment claim against MAI. (*Id.* ¶¶ 108-18.)

## Discussion

**A.   Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable

inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations but it must provide allegations that raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted). When dismissal is appropriate, leave to amend should generally be given freely. *Id.* However, if the plaintiff's proposed amendment would fail to cure the pleading's deficiencies and amendment would be futile, the court may dismiss without leave. *Id.*

## B. Legal Standard on Federal Rule of Civil Procedure 12(c)

Rule 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c). The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1053 & n.4 (9th Cir. 2011) (the same standard of review applies to motions brought under Rule 12(c) as motions brought under Rule 12(b)(6)). On a Rule 12(c) motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.*

**C.    Legal Standard on Motion to Dismiss Based on Statute of Limitations**

On a Rule 12(b)(6) motion, a court may dismiss on the ground that it is barred by the applicable statute of limitations only when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (citations omitted). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) ("Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."). Futher, a motion to dismiss based on the running of the statute of limitations period may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980).

**D.    Legal Standard on Federal Rule of Civil Procedure 12(b)(5)**

Rule 12(b)(5) provides that a party may move to dismiss for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 688 (9th Cir. 1988) (citation omitted). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (citing 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (3d ed. 2002 & Supp. 2003)). If service of process is found to be insufficient, the Court may dismiss the action or quash the service. *See S.J. v. Issaquah Sch. Dist*. No. 411, 470 F.3d 1288, 1293 (9th Cir. 2006).

However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists*, 840 F.2d at 688 (citation omitted). "[N]either actual notice, nor simply naming the person in the

caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial  compliance with Rule 4." *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013).  "The court may weigh and determine disputed issues of fact on a Rule 12(b)(5) motion." *Cranford v. United States*, 359 F. Supp. 2d 981, 984 (E.D. Cal. 2005).

**Discussion**

**A.    Request for Judicial Notice**

In their replies, Defendants Tanaka, McDonald, and the City seek judicial notice of the motion to dismiss felony information, declaration of counsel and memorandum in support of the motion filed on May 26, 2017 in the 2014 State Criminal Case against Mau in *State of Hawaii v. Laurel J. Mau*, Circuit Court of the First Circuit of the State of Hawaii, Case No. 14-1-1877.  (Dkt. No. 92; Dkt. No. 100 at 5-8 & n.2[3]; Dkt. No. 101 at 4 n.2; Dkt. No. 101-1, RJN, Ex. A.)

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Further, the court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc*., 285 F.3d 801, 803 n. 2 (9th Cir 2002)); *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

---

[3] McDonald seeks judicial notice of the motion to dismiss indictment filed by Defendant Tanaka.

13

Because the documents support an argument relating to the accrual of the statute of limitations that was not first presented in the moving briefs, the Court DENIES Tanaka, McDonald and the City's request for judicial notice. *See Warwick v. Univ. of the Pac.*, 585 Fed.App'x 412 (2014) (denying request for judicial notice set forth in reply brief because court cannot consider matters not "specifically and distinctly raised and argued in the opening brief"); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1149 n.2 (C.D. Cal. 2007) (denying request for judicial notice presented for the first time in a reply).

**B.    First Cause of Action - 42 U.S.C. § 1983**

    **1.    State Action**

Defendants MAI, McDonald and Mitsunaga/Fujii argue that the § 1983 cause of action fails to state a claim because they were not state actors.[4]  (Dkt. No. 71-1 at 10-11; Dkt. No. 72 at 11-15; Dkt. No. 79 at 6-8.)  Plaintiff responds that these Defendants were state actors by jointly acting with the City Defendants.[5]  (Dkt. No. 93 at 12-26.)

---

[4] As an initial issue, MAI argues the first cause of action should be dismissed because it is not named as a defendant, and even if it was named, it was not a "state actor" subject to suit under section 1983.  (Dkt. No. 71-1 at 9-13.)  Plaintiff responds that the allegations of the complaint, as a whole, alleges that MAI was a co-conspirator with its agent, representative, and attorney along with government officials to deprive Mau of her constitutional rights; however, to the extent the first claim needs to identify MAI, Mau requests leave to amend.  (Dkt. No. 93 at 26.)  While MAI is not named as a defendant in the first cause of action, (Dkt. No. 1, Compl. ¶ 83), the Court considers MAI as a defendant because its liability appears to be based partially on the conduct of MAI's principal, Defendant Mitsunaga, who also argues he was not a state actor.  (*See* Dkt. No. 93 at 21-24.)

[5] In addressing McDonald's motion to dismiss as well as Mitsunaga/Fujii's joinder in MAI's motion to dismiss, Plaintiff incorporates by reference the arguments raised in opposition to MAI's motion to dismiss.  (Dkt. Nos. 94 at 2; Dkt. No. 95 at 2.)  In reply, McDonald objects to Mau's opposition incorporating her arguments raised in response to MAI's motion to dismiss because it violates the page and word count limitation and he should not be required to glean through Mau's arguments in response to another defendant to guess which argument is applicable to them.  (Dkt. No. 100 at 4 & n. 1.)

The Federal Rules of Civil Procedure do not sanction the incorporation of substantive material by reference and courts need not consider such arguments especially since it circumvents the page limits set for in the district court local rules.  *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996) ("the incorporation of substantive material by reference is not sanctioned by the federal rules at issue, and the district court did not abuse its discretion in striking the incorporations"); *Calence, LLC v.*

42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under *color of state law*." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012) (emphasis added).

"[S]tate action is an element of a § 1983 claim." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 309 (2001). The United States Supreme Court has recognized that a private person who is a "willful participant in joint action with the State" or "jointly engaged with state officials in the challenged action" are acting "under color of" state law under a § 1983 action. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954 (9th Cir. 2008) (*en banc*) ("even a private entity can, in certain circumstances, be subject to liability under section 1983."). A plaintiff must show that "the conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State." *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982).

"The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d

---

*Dimension Data Holdings, PLC*, 222 Fed. App'x 563, 566 (9th Cir. 2007) (the district court did not abuse its discretion in refusing to consider an argument that the plaintiff incorporated by reference from briefing on a prior motion). Nonetheless, the Court considers Plaintiff's incorporated by reference arguments as it does not impact the Court's conclusion. However, in the event there is another round of motions to dismiss, Plaintiff must file a separate opposition brief for each motion filed.

423, 444–45 (9th Cir. 2002)).  In this case, Plaintiff relies on the joint action test.[6]  (*See* Dkt. No. 93 at 15; Dkt. No. 95 at 4-5.)

Joint action can be satisfied either "by proving the existence of a conspiracy or by showing that the private party was 'a willful participant in joint action with the State or its agents.'"  *Tsao,* 698 F.3d at 1140 (quoting *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989)); *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983) (citing *United States v. Price,* 383 U.S. 787, 794 (1966) ("A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights.")).  The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Tsao*, 698 F.3d at 1140 (internal quotation marks and citations omitted); *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) ("The joint action test for state action is met where private persons are willful participants in joint activity with the State or its agents that effects a constitutional deprivation.") (internal quotation marks and alteration omitted).  For instance, "[c]ourts have found a private citizen to be acting under color of law where law enforcement relied solely upon the citizen's evidence, without any independent investigation."  *Chilcoat v. Odell*, 517 F. Supp. 3d 1299, 1314 (D. Utah 2021).  Further, there should be a "significant" involvement of the state in the conduct at issue.  *See Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983) (landlord acted under color of state law due to significant state action where the police was involved at each step of the eviction).

"On the other hand, we have held that merely complaining to the police does not convert a private party into a state actor."  *Rivera v. Green*, 775 F.2d 1381, 1382–84 (9th Cir .1985), *cert. denied*, 475 U.S. 1128 (1986).  Further, consultation and information sharing, or presenting a report required by law to a state official does not rise to the level

---

[6] Defendants primarily rely on cases involving the government nexus test which is not applicable in this case.

of joint action.  *O'Handley v. Weber*, 62 F.4th 1145, 1160 (9th Cir. 2023); *Sykes v. State of Cal. (Dep't of Motor Vehicles)*, 497 F.2d 197, 202 n.3 (9th Cir. 1974) (citation omitted).

A state action analysis "begins by identifying the 'specific conduct of which the plaintiff complains.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).  Here, Mau alleges MAI Defendants, which include MAI, Mitsunaga, McDonald, Fujii, Otani and Tanaka, and City Defendants, which include Prosecutor Kaneshiro, Deputy Prosecutor Delaplane and Investigator Branco, conspired to deprive her of her constitutional right to be free from an unreasonable seizure without probable cause under the Fourth and Fourteenth[7] Amendment right when she was falsely prosecuted in the 2014 State Criminal Case which terminated in her favor on September 15, 2017.  (Dkt. No. 1, Compl. ¶¶ 30-78, 81, 84.)

While the complaint does not expressly allege that any of the private citizens, such as MAI, McDonald, Mitsunaga and Fuii were state actors, the Court looks at the allegations in the complaint and construes them in the light most favorable to Mau to determine if she has sufficiently alleged Defendants MAI, McDonald, Mitsunaga and Fuii were state actors.

As to MAI and Mitsunaga, the complaint alleges facts that Mitsunaga acted jointly with Kaneshiro, a state actor, to allegedly deprive Mau of her constitutional right to be free from an unreasonable seizure.  The complaint alleges through a number of meetings, email and telephone conversations, Defendant Mitsunaga recruited Prosecutor Kaneshiro and after having recruited him, worked closely with him to allegedly conjure a false narrative that Mau worked on "side" jobs" to the harm of MAI and ultimately brought false criminal charges against Mau.  (Dkt. No. 1, Compl. ¶¶ 29-45, 54-55.)  Viewing the

---

[7] Plaintiff may only bring a Fourth Amendment claim for malicious prosecution under 42 U.S.C. § 1983.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion); *Thompson v. Clark*, 596 U.S. 36, 42 (2022) (recognizing a § 1983 claim for malicious prosecution under the Fourth Amendment).

24cv0253-GPC(WRP)

facts in the light most favorable to Mau, the Court concludes that she sufficiently alleges that Mitsunaga and/or MAI was a joint actor with the state because he was "a willful participant in joint action with the State or its agents." *See Tsao*, 698 F.3d at 1140.

On the other hand, as to McDonald, the complaint alleges he wrote a false sworn statement that was used in the 2014 State Criminal Case against Mau. (Dkt. No. 1, Compl. ¶ 66.) Simply writing a false sworn statement does not plausibly allege joint action with the state. *See Sykes*, 497 F.2d at 202 n.3. Further, the other allegations against McDonald are conclusory and do not support any joint action with state actors. (*See* Dkt. No. 1, Compl. ¶¶ 25, 28, 83.)

Finally, as to Fujii, the complaint alleges he submitted a police report in July 2012 on Mau but even though the police tried to follow up with Fujii, the police were not successful and were not able to obtain further information from him. (*Id.* ¶ 31.) It further alleges that Fujii's report shows he was involved in the conspiracy to involve the police "but in an insubstantial way." (*Id.* ¶ 31.) The complaint also claims that Fujii made financial contributions to Prosecutor Kaneshiro's re-election campaign. (*Id.* ¶ 34.) Based on precedent, these two acts do not plausibly allege that Fujii was a willful participant in joint action with the State. *See Sykes*, 497 F.2d at 202 n.3.

In conclusion, the Court DENIES Defendants MAI and Mitsunaga's motion to dismiss the first cause of action based on state action, and GRANTS Defendants McDonald and Fujii's motion to dismiss the first cause of action for failure to allege they were state actors subject to § 1983.

## 2. Statute of Limitation – 42 U.S.C. § 1983

Defendants Tanaka, MAI, and Mitsunaga[8] filed separate motions to dismiss arguing that Mau's first cause of action is barred by the statute of limitations. (Dkt. No. 58 at 14-22; Dkt. No. 71-1 at 17-20; Dkt. No. 72 at 20-26; Dkt. No. 79 at 6, 9.) The City

---

[8] Because Defendants McDonald and Fujii are dismissed for failing to allege they were state actors, the Court need not address their statute of limitations argument.

also moves for judgment on the pleadings arguing the claim is barred by the statute of limitations.[9]  (Dkt. No. 86-1.)  In opposition, Plaintiff argues that her claims are not barred by the statute of limitation because she did not know about the malice element to support a claim for malicious prosecution under 42 U.S.C. § 1983 until June 17, 2022, when the indictment in the 2022 Federal Criminal Case against Defendants was unsealed.[10]  (Dkt. No. 82 at 10.)

Here, the complaint alleges MAI, Mitsunaga, Otani, Tanaka, Fujii and McDonald and City Defendants, through a conspiracy, deprived her of her right to be free from an unreasonable seizure without probable cause under the Fourth and Fourteenth Amendment when she was falsely prosecuted in the 2014 State Criminal Case which terminated in her favor on September 15, 2017.  (Dkt. No. 1, Compl. ¶¶ 30-78, 81, 84.)  It further alleges Plaintiff did not learn of the facts until the indictment in the 2022 Federal Criminal Case was unsealed.  (*Id.* ¶¶ 18, 23.)

42 U.S.C. § 1983 cases are governed by the forum state's statute of limitations for personal injury cases.  *Nance v. Ward*, 597 U.S. 159, 174 (2022) ("all § 1983 suits must be brought within a State's statute of limitations for personal-injury actions.") (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  In Hawaii, the statute of limitation for personal injury cases is two years.  *See* Haw. Rev. Stat. § 657-7 ("[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted

---

[9] The City recognizes it is not specifically named in any of the causes of action but concedes that Plaintiff appears to allege a *Monell* claim against the City.  (Dkt. No. 86-2 at 2.)  In the amended complaint, Plaintiff must specifically name and allege facts and claims against the City.

[10] Plaintiff filed an opposition to Tanaka's motion to dismiss.  (Dkt. No. 82.)  In opposition to MAI's motion to dismiss on the statute of limitations, Mau "incorporates the points and authorities from the Tanaka Opposition." (Dkt. No. 93 at 29.)  In opposing McDonald's motion to dismiss, Mau "incorporates the points and authorities" made in her opposition to MAI's motion to dismiss, which also includes her opposition to Tanaka's motion to dismiss as Exhibit A.  (Dkt. No. 95 at 2.)  In the City's opposition, Mau similarly incorporates the points and authorities from Tanaka's opposition.  (Dkt. No. 97 at 7.)  As discussed above, incorporating substantive arguments by reference is not condoned by the Rules.  While the Court considers Mau's arguments incorporated by reference, Plaintiff must file separate oppositions on any future motions filed by each Defendant.

within two years after the cause of action accrued, and not after"). "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).

### a.    Accrual and the Discovery Rule

Generally, a § 1983 claim accrues "when the plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can file suit and obtain relief[.]" *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks and citation omitted). "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* at 391 (citation omitted).

Meanwhile, the "discovery rule" is a doctrine that "delays accrual of a cause of action until the plaintiff has 'discovered' it" and operates "as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a 'complete and present cause of action[.]'" *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644 (2010). Generally, the "discovery rule" extends the accrual of the statute of limitations from the date the plaintiff has a "complete and present cause of action" to the date when plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Bird,* 935 F.3d at 743 (quoting *Knox*, 260 F.3d at 1013**).**

An accrual analysis begins with identifying "the specific constitutional right" alleged to have been infringed. *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 370 (2017). Here, Plaintiff alleges that MAI Defendants and City Defendants conspired to deprive her of her consitutitonal right to be free from an unreasonable seizure under the Fourth Amendment. (Dkt. No. 1, Compl. ¶ 84.) "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Manuel,* 580 U.S. at 370 (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)). A malicious prosecution claim under Hawaii law has the following elements: (1) the prior proceeding was initiated without probable cause; (2) the prior proceeding was initiated with malice; and (3) the prior proceeding was terminated in the plaintiff's

favor. *Young v. Allstate Ins. Co*., 198 P.3d 666, 680 (Haw. 2008). To establish malice, a plaintiff must show that the prosecutor initiated the prior proceedings with the intent, without justification or excuse, to misuse the criminal justice system as a means for causing harm. *Arquette v. State of Haw.*, 290 P.3d 493, 507 (Haw. 2012).

On a claim for malicious prosecution under § 1983, the United States Supreme Court held a claim accrues upon the favorable termination of the prosecution in the plaintiff's favor, and not upon the date of injury, which occurs as soon as legal process is brought. *McDonough v. Smith*, 588 U.S. 109, 114 (2019). The Court opted for a delayed accrual for a § 1983 malicious prosecution claim due to "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 118.

In this case, the parties disagree over the accrual date of Mau's Fourth Amendment claim—that is, the date on which the applicable two-year statute of limitations began to run and application of the discovery rule. The moving defendants rely on *McDonough* for the proposition that Mau's claim accrued when the criminal charges were dismissed based upon a lack of probable cause, and assert that the discovery rule is already incorporated into federal accrual law such that Mau's claim accrued when she became aware of the actual injury, and not when the plaintiff suspected a legal wrong. (*See* Dkt. No. 58 at 15-18 (citing *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048-49 (9th Cir. 2008).)

In opposition, Mau simply argues that she did not have a complete and present cause of action for her malicious prosecution claim; in other words, she did not have facts to support each element of a malicious prosecution claim because she did not know the prior proceeding was initiated with malice, an element to prove malicious prosecution, until the indictment in the 2022 Federal Criminal Case was unsealed on June 17, 2022. (Dkt. No. 82 at 10-11; Dkt. No. 1, Compl. ¶¶ 21-23.)

The Court finds that under *McDonough*, Mau's § 1983 malicious prosecution claim accrued on September 15, 2017 when the criminal charges against Mau were

dismissed with prejudice. *See McDonough,* 588 U.S. at 114. As a result, the § 1983 claim should have been filed by September 15, 2019 unless the discovery rule delayed accrual of the cause of action.

Mau's argument is implicitly grounded on the notion that the discovery rule applies to the element of malice and extends the general accrual date to a date when she discovered or could have reasonably discovered the facts that support the element of malice. Essentially, she seeks an extension of the holding in *Merck* where the U.S. Supreme Court held that, for purposes of applying the discovery rule, facts showing scienter are among those that "constitut[e] the [securities fraud] violation." *Merck & Co., Inc.*, 559 U.S. at 649.

In *Merck*, plaintiffs filed a securities fraud action under § 10(b) of the Securities Exchange Act of 1934 based upon alleged misrepresentations made between 25 and 44 months from the date the action was filed. The Securities Exchange Act provides that

> a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of –
>
> (1) 2 years *after the discovery of the facts constituting the violation*; or
> (2) 5 years after such violation.

28 U.S.C. § 1658(b) (emphasis added).

In concluding that discovery of facts supporting "scienter" are among those that "constitut[e] the violation" for discovey rule purposes, the *Merck* court observed that the "fact" of scienter "constitut[es]" an important and necessary element of a § 10(b) "violation" because a plaintiff cannot recover without proving that a defendant made a material misstatement with an intent to deceive—not merely innocently or negligently. *Id.* at 648-49; *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Further, the significance of scienter is reflected in the special heightened pleading requirements for the scienter element of § 10(b) fraud cases. *See* 15 U.S.C. § 78u–

4(b)(2) (requiring plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").  As such, unless a section 10(b) plaintiff can set forth facts rendering an inference of scienter "at least as likely as" any plausible opposing inference, the claim will fail.  *See Tellabs*, 551 U.S. at 328.  Given the importance of scienter in a securities fraud action, application of the discovery rule would necessarily apply to the element of scienter because otherwise, "[s]o long as a defendant concealed for two years that he made a misstatement with an intent to deceive, the limitations period would expire before the plaintiff had actually 'discover[ed]' the fraud." *Merck,* 559 U.S. at 649.  Finally, any concern of stale claims creating undue hardships for defendants was tempered by the federal law's unqualified bar on actions filed "5 years after such violation."  *Id*. at 650.

The background and reasoning in *Merck* that justified including the "fact" of scienter into the discovery rule calculus is not present in support of malice being a "fact" that delays the statute of limitations in a malicious prosecution case.  While the tort of malicious prosecution is "'not generally favored in our legal system, and thus its requirements are construed strictly against the party bringing the action,'" *Young,* 198 P.3d at 682 (quoting *Wong v. Tabor,* 422 N.E.2d 1279, 1283 (Ind. Ct. App. 1981)), a malicious prosecution action does not include a heightened pleading requirement or unqualified bar on actions 5 years after the violation.  Nor is there an enabling statute for a malicious prosecution claim which specifically conditions accrual on the "discovery of the facts constituting the violation."  Here, Plaintiff is seeking to bring a malicious prosecution action nearly 7 years after the criminal prosecution was dismissed and the action accrued.  Under Plaintiff's rationale, application of the discovery rule could preserve a right of action for a vast stretch of time.  Such open-ended application would "thwart[] the basic objective of repose underlying the very notion of a limitations period." *Rotella v. Wood*, 528 U.S. 549, 554 (2000).

Meanwhile, the Ninth Circuit has not squarely addressed application of the discovery rule in the context of a malicious prosecution action but has addressed the issue

24cv0253-GPC(WRP)

in employment discrimination actions.  In *Lukovsky*, the court observed that the question "is what do we mean by 'injury,' that is, what must the plaintiff 'discover' – that there has been an adverse action, or that the employer acted with discriminatory intent in performing the act?"  535 F.3d at 1048.  The Ninth Circuit answered the question by concluding that the claim accrued when "plaintiffs knew they had been injured and by whom, [ ], even if at that point in time the plainitiffs did not know of the legal injury, i.e., that there was an allegedly discriminatory motive underlying the failure to hire."  *Id*. at 1051; *accord, Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (statute of limitations period commenced when plaintiff learned of employment decision, not when he learned decision may have been discriminatorily motivated); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995) ("plaintiff's action accrues when he discovers he has been injured, not when he determines that the injury was unlawful").

Ultimately, the Court concludes that the concept of malice is more akin to a discriminatory motive in a discrimination case than scienter in a federal securities fraud action.  Therefore, notice of the facts supporting malice was not a prerequisite for the cause of action to accrue.  Accordingly, the Court will not postpone the beginning of the limitations period from the date Mau's prosecution was dismissed to the date when she learned that the prosecution was initiated with malice.  Since the case was filed more than two-years following the dismissal of the prosecution, Mau's § 1983 cause of action is untimely absent some form of equitable tolling.

**b.    Equitable Estoppel and Equitable Tolling**

In *Lukovsky*, the court recognized that apart from the discovery rule, "equitable estoppel" and "equitable tolling" were doctrines that could extend the limitations period or preclude a defendant from asserting a statute of limitations defense.  535 F.3d at 1051. Further, where tolling is based on equitable estoppel or fraudulent concealment, the conduct must be plead with specificity required by Rule 9(b).  *Angel v. BAC Home Loan Serv., LP*, Civ. No. 10–00240 HG–LEK, 2010 WL 4386775, at *4 (D. Haw. Oct. 26, 2010).  Under Rule 9(b) a plaintiff "must state the time, place and specific content of the

false representations as well as the identities of the parties to the misrepresentation." *Id.* (quoting *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988)).

Here, as recognized above, the complaint does not explicitly assert that her claims are timely, under the accrual and discovery rules, and only implicitly alleges tolling. Therefore, the Court dismisses the first cause of action as barred by the statute of limitations. *See Huynh,* 465 F.3d at 997 (court may dismiss if "the running of the statute is apparent on the face of the complaint.")*; see Sakugawa v. IndyMac Bank, F.S.B.,* Civil No. 10–00504 JMS/LEK, 2010 WL 4909574, at *3 (D. Haw. Nov. 24, 2010) (dismissing cause of action for failing to plead facts to support equitable tolling with leave to amend) (citing cases); *Angel,* 2010 WL 4386775, at *5 (dismissing for failing to sufficiently plead fraudulent concealment or other grounds for equitable tolling).

In conclusion, the Court GRANTS Defendants Tanaka, MAI, and Mitsunaga's motions to dismiss the first cause of action as time barred with leave to amend. The Court also GRANTS the City's motion for judgment on the pleadings on the first cause of action as time barred with leave to amend. In her amended complaint, Plaintiff must allege facts to support a tolling theory. *See Hinton v. Pac. Enters*., 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff."). Further, in the amended complaint, Plaintiff should allege facts that support a tolling theory as to each individual defendant based on the applicable law. *See Barker v. American Mobil Power Corp*., 64 F.3d 1397, 1402 (9th Cir. 1995) ("Plaintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants."); *but see In re Animation Workers Antitrust Litig*., 123 F. Supp. 3d 1175, 1207 (N.D. Cal. 2015) (distinguishing *Barker* and holding that plaintiffs' failure to specifically allege fraudulent concealment against certain defendants did not preclude tolling of limitations period for antitrust conspiracy claims under fraudulent concealment doctrine as to those defendants); *see Tang v. Cal. Reconveyance Co.,* No. 10–CV–03333–LHK, 2010 WL 5387837, at *6 (N.D. Cal. Dec.

22, 2010) (plaintiffs must "detail the alleged wrongdoing of each Defendant and must specify with detail how and why equitable tolling is appropriate in these circumstances.").

**C.    Second Cause of Action – Malicious Prosecution**

The second cause of action alleges a malicious prosecution claim against Defendants Prosecutor Kaneshiro and Deputy Prosecutor Delaplane, (Dkt. No. 1, Compl. ¶¶ 93-107).

Defendants Prosecutor Kaneshiro and Deputy Prosecutor Delaplane did not move to dismiss the claims against them. Yet, all moving Defendants attempt to dismiss the malicious prosecution claim against them by alternatively arguing that, even if they were named as defendants, dismissal is still appropriate for varying reasons.

The Court declines to speculate as to whether the complaint states a claim for malicious prosecution against moving Defendants when they are not alleged as defendants. Even at the hearing, Plaintiff's counsel recognized the deficiencies of failing to name and alleging facts against all Defendants and sought leave to amend. Therefore, the Court DENIES moving Defendants' motion to dismiss the second cause of action as procedurally improper.

**D.    Third Cause of Action - Fraudulent Concealment**

The third cause of action alleges a fraudulent concealment claim against Defendant MAI, (*id.* ¶¶ 108-18). Similarly, moving Defendants Tanaka, Mitsunaga/Fujii, McDonald and the City seek to dismiss the fraudulent concealment cause of action even though they are not named as defendants. At the hearing, Plaintiff's counsel also acknowledged the deficiencies on the third cause of action for failing to name and alleging facts against all Defendants and sought leave to amend. For the same reasons stated above, the Court DENIES Defendants Tanaka, Mitsunaga/Fujii, McDonald and the City's motions to dismiss the third cause of action as procedurally improper.

Instead, the complaint alleges a fraudulent concealment claim solely against Defendant MAI. MAI's motion to dismiss summarily argues that Plaintiff has failed to

allege the fraud with specificity and that merely breaching a duty to disclose discovery in the 2012 Employment Civil Action is insufficient to state a claim. (Dkt. No. 71-1 at 15-16.) Plaintiff responds that she has sufficiently alleged fraudulent concealment, but ultimately, seeks leave to amend. (Dkt. No. 93 at 28-29.)

Both parties rely on the elements of fraudulent concealment in *Garrison v. Oracle*, Case No. 14–CV–04592–LHK, 2015 WL 1849517, at *8 (N.D. Cal. Apr. 22, 2015). (Dkt. No. 71-1 at 16; Dkt. No. 93 at 28-29.) However, *Garrison* is not applicable because the case involved the statute of limitations and whether it can be tolled due to fraudulent concealment, and did not address fraudulent concealment as a cause of action. *See id.* Second, the fraudulent concealment analysis in *Garrison* addressed federal law, not Hawaii law.

In Hawaii, a claim for fraudulent concealment is a form of fraud and assessed under the four elements of fraud. *Pac. Stock, Inc. v. Pearson Educ., Inc.,* 927 F. Supp. 2d 991, 1003-04 (D. Haw. Feb. 26, 2013) ("Fraudulent concealment is just a form of fraud.") (citing *Tachibana v. Colo. Mountain Dev., Inc.*, No. 07–CV–00364, 2011 WL 1327113, *3 n. 7 (D. Haw. Apr. 5, 2011) ("We interpret the reference to 'fraudulent concealment' as simply a means of clarifying for Defendants that the type of fraud alleged includes fraud by omission and concealment, and not just affirmative conduct.")); *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010)[11] (treating a fraudulent concealment claim as fraud based on alleged failures to disclose information); *Associated Eng'rs & Contractors, Inc. v. State of Haw.*, 567 P.2d 397, 418 (Haw. 1977) (citation omitted) ("Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another.").

---

[11] In *Sung*, the court distinguished fraudulent concealment as a tolling doctrine as plead "in the context of actions taken by a liable party to conceal a known cause of action." *Sung*, 710 F. Supp. 2d at 1047 n.7 (citing *Au v. Au*, 626 P.2d 173 (Haw. 1981) (citing H.R.S. § 657-20)). Therefore, the court labeled the cause of action for fraudulent concealment as one for fraudulent nondisclosure. *Id.* at 1047.

"To prevail on a fraud claim, a plaintiff must demonstrate (1) that false representations were made by the defendant, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon them, and (4) that the plaintiff detrimentally relied on them." *Pac. Stock*, 927 F. Supp. 2d at 1003-04 (citing *Hawaii's Thousand Friends v. Anderson*, 768 P.2d 1293, 1301 (Haw. 1989)). In Hawaii, fraud can be perpetrated by non-disclosure as well as by affirmative misrepresentation. *See Santiago v. Tanaka*, 366 P.3d 612, 624 (Haw. 2016) (citation omitted) (addressing business transaction).

Where fraud is alleged, the pleading requirements of Rule 9(b) apply to the claim. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, "[t]o satisfy Rule 9(b), the plaintiff must include 'the who, what, when, where, and how' of the fraud." *Vess*, 317 F.3d at 1106 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Here, the third cause of action for fraudulent concealment concerns MAI's conduct in the underlying 2012 Employment Civil Action. Mau alleges that MAI had a duty to disclose written communications with the DPA in response to her discovery request during the 2012 Employment Civil Action which deprived her of evidence of retaliation and a cover up in that case. (Dkt. No. 1, Compl. ¶¶ 52-53, 109-111.) She alleges MAI concealed written communications and information she sought in discovery. (*Id.* ¶ 110.) These allegations do not sufficiently allege the elements of fraud to support a fraudulent concealment claim.

Mau also claims that MAI had a duty to conduct the civil trial in good faith and present truthful evidence; instead, MAI coached Alivado to provide false testimony during the 2012 Employment Civil Action trial. (*Id.* ¶¶ 58-59, 113-14.) The complaint also asserts that MAI improperly concealed Alivado's perjured testimony, thereby depriving her of evidence of retaliation and a cover-up and would have changed the

28

outcome of the trial.  (*Id.* ¶¶ 115, 117.)  Again, these allegations do not sufficiently allege a fraudulent concealment claim concerning Alivado's perjured testimony.  Accordingly, the Court GRANTS Defendant MAI's motion to dismiss the fraudulent concealment cause of action for failure to state a claim.

**E.    Tanaka's Motion to Dismiss Pursuant to Rule 12(b)(5)**

Alternatively, Defendant Sheri Tanaka also argues that the claims against her should be dismissed for insufficient service of process under Rule 12(b)(5) because she was not personally served.  (Dkt. No. 58 at 25-28.)  She asserts she was in Manhattan Beach, California and attaches a receipt from a Target Store in Manhattan Beach that is dated October 27, 2024 at 9:25 p.m. which is the date the process server allegedly served a woman at Tanaka's parent's address in Hawaii.  (Dkt. No. 58-1, Tanaka Decl. ¶¶ 3-4; Dkt. No. 58-1, Tanaka Decl., Ex. 1.)  Plaintiff responds that she has met her burden showing that Tanaka was properly served because the woman who was served responded affirmatively when the process server called out "Sheri?"  (Dkt. No. 82 at 26-31; Dkt. No. 82-1, Cameron Decl. ¶ 9.)   When the process service told the woman that he had some documents for her, she responded, "Oh, I'm not Sheri."  (*Id.* ¶ 10.)   Because of her initial acknowledgement and response to the name Sheri, the process server left the complaint and summons with her.  (*Id.* ¶ 11.)   In her reply, Tanaka provides further evidence that she signed for her son's lunch at the Terranea Resort in Palos Verdes, California at approximately 8:07 am, Hawaii time, on October 27th, 2024.  (Dkt. No. 91-1, Tanaka Suppl. Decl. ¶ 2.)

Sufficiency of service of process is governed by Rule 4.  Rule 4(e) addresses service of an individual within a judicial district of the United States and provides that service may be satisfied by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).  The State of Hawaii has identical rules governing service of process. *See* Haw. R. Civ. P. 4(d)(1).

As stated above, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  *Direct Mail Specialists*, 840 F.2d at 688 (citing *United Food & Com. Workers Union v. Alpha Beta Co*., 736 F. 2d 1371, 1382 (9th Cir. 1984)).  In *United Food & Com. Workers Union*, even though the summons failed to name all the defendants and specified the incorrect time for filing the answer, dismissal was not justified absent a showing of prejudice.  *Id.*  The court noted that "a defendant's answer and appearance in an action 'should be enough to prevent any technical error in form from invalidating the process.'"  *Id.*  "Dismissal is generally not justified absent a showing of prejudice."  *Clark v. Goodwill Indus. of Hawaii*, CV. No. 09–00184 DAE–LEK, 2009 WL 3050277, at *5 (quoting *United Food & Commercial Workers Union*, 736 F. 2d at 1382); *SEC v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007) (substantial compliance not met given the complete absence of any effort to serve the defendant with the complaint and summons).

Here, Mau has demonstrated substantial compliance with her multiple attempts to serve Tanaka in California and also in Hawaii.  (Dkt. No. 82-1, Cameron Decl.; Dkt. No. 82-7, Ex. 4.)  Even though the evidence provided shows that Defendant Tanaka was not personally served, she received sufficient notice of the complaint and summons which is demonstrated by her filing a motion to dismiss the complaint.   Given the flexibility of Rule 4, the Court finds that Plaintiff has substantially complied with Rule 4(e).  *See Clark*, 2009 WL 3050277, at *5 (fact that defendants filed motions to dismiss show "they

have fully apprised of the case against them").  Accordingly, the Court DENIES

Tanaka's motion to dismiss for insufficient service of process.

**F.    *Monell* Claim against the City**

The City argues that the § 1983 claim based on *Monell*'s final policymaker liability

fails to state a claim.  (Dkt. No. 86-1.)  Plaintiff responds that she has sufficiently alleged

the City's liability based on Prosecutor Kaneshiro's conduct as final policymaker, (Dkt.

No. 97 at 15-24); however, as noted by the City's reply, her opposition includes many

facts regarding policymaker authority not alleged in the complaint.  (Dkt. No. 101 at 6-7.)

A plaintiff can show municipal liability under § 1983 by showing (1) "a city

employee committed the alleged constitutional violation pursuant to a formal

governmental policy or a longstanding practice or custom which constitutes the standard

operating procedure of the local governmental entity"; (2) "the individual who committed

the constitutional tort was an official with final policy-making authority and that the

challenged action itself thus constituted an act of official government policy"; or (3) "an

official with final policy-making authority ratified a subordinate's unconstitutional

decision or action and the basis for it."  *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th

Cir. 1992) (internal quotation marks and citations omitted).  In *Pembaur*, the United

States Supreme Court described the contours of municipal liability based on "a single

decision by municipal policymakers."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480

(1986).  The Court explained,

> Municipal liability attaches only where the decisionmaker possesses final
> authority to establish municipal policy with respect to the action ordered.
> The fact that a particular official—even a policymaking official—has
> discretion in the exercise of particular functions does not, without more, give
> rise to municipal liability based on an exercise of that discretion.  The
> official must also be responsible for establishing final government policy
> respecting such activity before the municipality can be held liable.  *Authority
> to make municipal policy may be granted directly by a legislative enactment
> or may be delegated by an official who possesses such authority, and of
> course, whether an official had final policymaking authority is a question of
> state law.*

*Id.* at 481-83 (citations and footnotes omitted) (emphasis added). The identification of a final policymaker is a legal question to be decided by the trial judge before the case is presented to the jury. *Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir. 2004). As stated in *Pembaur,* the question of whether an official is a policymaker is governed by state law. *Pembaur,* 475 U.S. at 483.

In this case, the City is not explicitly named as a defendant on the § 1983 cause of action and the complaint does not explicitly allege *Monell* liability. Moreover, the complaint fails to provide any allegations or authority that granted Prosecutor Kaneshiro final policy-making authority. *See Puana v. Kealoha,* CIV. NO. 16-00659 LEK-WRP, 2021 WL 2292798, at *4 (D. Haw. June 4, 2021) (granting motion to dismiss because complaint did not sufficiently plead that any of the named individual defendants was an official with final policy-making authority); *but see Puana v. Kealoha,* CIV. NO. 16-00659 LEK-WRP, 2023 WL 413127, at *3-4 (D. Hawaiʻi Jan. 25, 2023) (finding the HPD Chief of Police "possessed final policymaking authority for the actions that lead to the presumed deprivation of [the plaintiff]'s constitutional rights," based upon Hawaiʻi Revised Statutes Section 52D-3, and Sections 6-1601, 6-1603, 6-1604, 6-1606 of the Revised Charter of the City and County of Honolulu 1973). Accordingly, the Court GRANTS the § 1983 claim against the City for failing to state a *Monell* claim.

## G.    Defendant City - Notice of Claim Requirement under H.R.S. § 46-72

The City alternatively argues that the § 1983 claim must be dismissed for Plaintiff's failure to comply with Hawaii Revised Statute ("H.R.S.") § 46-72[12], requiring her to provide written notice to the designated county representative within two years of

---

[12] H.R.S. section 46-72 provides, "[b]efore the county shall be liable for damages to any person for injuries to person or property . . . the person injured . . . within two years after the injuries accrued shall give . . . notice in writing of the injuries and the specific damages resulting, stating fully when, where, and how the injuries or damage occurred, the extent of the injuries or damages, and the amount claimed." H.R.S. § 46-72.

the occurrence of any injury.[13]  (Dkt. No. 86-1 at 5-6.)  The City also argues that § 13-111[14] of the Revised Charter of the City and County of Honolulu, which contains a six month limitations, also bars the § 1983 claim.  (*Id.* at 6.)  Mau disagrees claiming the "state notice of claim requirements are preempted by Section 1983 which exists to vindicate important federally created rights."  (Dkt. No. 97 at 13-14.)

As to the federal § 1983 causes of action, the Supreme Court has held that state notice of claim statutes are preempted by § 1983.  *Felder v. Casey*, 487 U.S. 131, 138 (1988) (citing *Orthmann v. Apple River Campground, Inc.,* 326 U.S. 99 (1985)); *Cf. Williams v. Reed*, 145 S. Ct. 465, 473 (2025) (§ 1983 preempts state's administrative-exhaustion requirement that immunizes government conduct otherwise subject to suit under § 1983).   The Ninth Circuit has similarly held that a § 1983 civil rights plaintiff is exempt from the requirements of state notice-of-claim statutes because section 1983 "preempts state-notice of claim statutes."  *Ellis v. City of San Diego, Cal.*, 176 F.3d 1183, 1191 (9th Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 153 (1988)).  The City's reliance on *Oakley v. State*, 505 P.2d 1082, 1186 (Haw. 1983), is not persuasive because that case only alleged state law causes of action and not a section 1983 claim.  Therefore, the City's argument that H.R.S. 46-72 applies to the § 1983 cause of action is without merit.  Accordingly, the Court DENIES the City's motion for judgment on the pleadings on the § 1983 claim for failing to comply with H.R.S. § 46-72.

## H.    Leave to Amend

To the extent the Court deems it necessary, Plaintiff seeks leave to amend.  (*See e.g.,* Dkt. No. 93 at 30.)  Because it would not be futile to allow Plaintiff to amend the

---

[13] The Court notes that the City only raises H.R.S. § 46-72 as it concerns the § 1983 cause of action, and not the state law causes of action.  (Dkt. No. 86-1 at 5-6.)

[14] Section 13-111 of the Revised Charter of the City and County of Honolulu provides that, "[n]o action shall be maintained for the recovery of damages for any injury to persons or property by reason of negligence of any official or employee of the city unless a written statement, stating fully when, where and how the injuries occurred, the extent thereof and the amount claimed therefor, has been filed with the corporation counsel within six months after the date the injury was sustained."

24cv0253-GPC(WRP)

complaint, the Court GRANTS Plaintiff's request for leave to amend. *See Chubb*, 710 F.3d at 956.

**Conclusion**

Based on the above, on the first cause of action, the Court GRANTS Defendants McDonald and Fujii's motion to dismiss for failing to state a claim; GRANTS Defendants Tanaka, MAI, and Mitsunaga's motion to dismiss as time barred; and GRANTS Defendant City's motion for judgment on the pleadings as time barred. The Court also DENIES Tanaka's motion to dismiss all claims in the alternative for insufficient service of process. The Court GRANTS the City's motion for judgment on the pleadings the § 1983 claim for failing to state a claim. The Court DENIES Defendant City's motion to dismiss in the alternative on the first cause of action as time barred by H.R.S. § 46-72.

On the second cause of action, the Court DENIES all Defendants' motion to dismiss as procedurally improper. Finally, on the third cause of action, the Court GRANTS Defendant MAI's motion to dismiss.

The Court GRANTS Plaintiff's request for leave to file an amended complaint to correct the deficiencies noted above. Plaintiff shall file an amended complaint within 21 days of the Court's order.

IT IS SO ORDERED.

Dated: April 4, 2025

Hon. Gonzalo P. Curiel
United States District Judge