UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREL J. MAU, an individual,<br><br>                                    Plaintiff,<br><br>v.<br><br>CITY & COUNTY OF HONOLULU;<br>KEITH MITSUYOSHI PROSECUTOR<br>KANESHIRO; JACOB GEORGE<br>DELAPLANE; VERNON BRANCO;<br>MITSUNAGA & ASSOCIATES, INC.;<br>DENNIS KUNIYUKI MITSUNAGA;<br>AARON SHUNICHI FUJII; CHAD<br>MICHAEL MCDONALD; TERRI ANN<br>OTANI; SHERI JEAN TANAKA; RUDY<br>ALIVADO; and DOE DEFENDANTS 1 -<br>50, inclusive,<br><br>                                    Defendants. | Case No.:  24cv0253-GPC(WRP)<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTIONS TO DISMISS**<br><br><br>**[Dkt. Nos. 121, 122, 124, 126, 127, 128,<br>129.]** |

Before the Court are the fully briefed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) of (1) Defendant Chad Michael McDonald, (Dkt. Nos. 121, 142, 144); (2) Defendant Mitsunaga & Associates, Inc., (Dkt. Nos. 122, 138, 145); (3) Defendant Sheri Jean Tanaka, (Dkt. Nos. 124, 139, 146); (4) Defendants Dennis Kuniyuki Mitsunaga and Aaron Shunichi Fujii, (Dkt. Nos. 126, 143, 147); (5) Defendant

City and County of Honolulu, (Dkt. Nos. 127, 137, 148); (6) Defendant Jacob George Delaplane, (Dkt. Nos. 128, 140, 149); and (7) Defendant Vernon Branco, (Dkt. Nos. 129, 141, 150). A hearing was held on September 2, 2025. (Dkt. No. 156.) After a careful review of the parties' briefs, the operative first amended complaint, and the applicable law, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss.

## PROCEDURAL BACKGROUND

According to the operative first amended 42 U.S.C. § 1983 ("§ 1983") civil rights complaint,[1] ("FAC"), Plaintiff Laurel Mau ("Plaintiff" or "Mau") alleges Defendants City & County of Honolulu ("City"); Keith Mitsuyoshi Kaneshiro, Prosecuting Attorney for the City and County of Honolulu, ("Prosecutor Kaneshiro"); Jacob George Delaplane, Deputy Prosecuting Attorney for the City and County of Honolulu, ("Deputy Prosecutor Delaplane"); Vernon Branco, Investigator for the Department of the Prosecuting Attorney, ("Investigator Branco") (collectively "City Defendants"); and Defendants Mitsunaga & Associates, Inc. ("MAI"); Dennis Kuniyuki Mitsunaga, the owner of MAI, ("Mitsunaga"); Terri Ann Otani, an employee of MAI ("Otani"); Aaron Sunichi Fujii, an employee of MAI, ("Fujii"); Chad Michael McDonald, an employee of MAI, ("McDonald"); Sheri Jean Tanaka, attorney for MAI, ("Tanaka"); and Rudy Alivado, friend of Mitsunaga, ("Alivado") (collectively "MAI Defendants") conspired to maliciously prosecute her.[2] (Dkt. No. 119, FAC.) She also alleges claims for malicious prosecution and fraudulent concealment under state law. (*Id.*)

Entry of default was entered against Defendant Otani on the original complaint on November 29, 2024. (Dkt. No. 67.) Defendant Alivado filed an answer to the FAC on May 9, 2025. (Dkt. No. 123.) On May 8, 2025, the Court granted a stipulation to set aside entry of default against Prosecutor Kaneshiro, and on May 23, 2023, he filed an

---

[1] On April 4, 2025, the Court granted in part and denied in part certain Defendants' motions to dismiss with leave to amend, and granted in part and denied in part Defendant City's motion for judgment on the pleadings with leave to amend. (Dkt. No. 117.)
[2] The original complaint was filed on June 14, 2024. (Dkt. No. 1, Compl.)

24cv0253-GPC(WRP)

answer.  (Dkt. Nos. 120, 132.)  The remaining Defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (Dkt. Nos. 121, 122, 124, 126-29.)  Oppositions and replies were filed.[3]  (Dkt. Nos. 137-50.)

A hearing on the motions was held on September 2, 2025.  At the hearing, Plaintiff agreed to dismiss with prejudice Defendant Chad Michael McDonald and Defendant Aaron Shunichi Fujii.  (*See* Dkt. No. 156.)  As such the Court GRANTS Defendant McDonald and Fujii's unopposed motions to dismiss with prejudice.  (Dkt. Nos 121, 126.)

## FACTUAL BACKGROUND

Mau was employed by MAI through 2011 when she was terminated.  (Dkt. No. 119, FAC ¶ 25.)  Afterwards, she sought and obtained unemployment benefits.  (*Id.*)  On August 22, 2012, Mau filed a lawsuit against MAI alleging employment discrimination under the Age Discrimination in Employment Act and Title VII of the Civil Rights Act ("2012 Employment Civil Action").  (*Id.* ¶¶ 25, 26, 103.)  Based on this, Mau alleges that MAI and City Defendants conspired to maliciously prosecute her and, that as part of the conspiracy, the prosecution withheld exculpatory evidence and obtained groundless criminal charges using fabricated and perjured testimony.  (*Id.* ¶¶ 84-100, 103-20, 124-135, 141-42, 144-152, 163-164.)  Mau claims that the scheme involved the fabrication of a false narrative that she had been terminated for doing "side projects" on company time,

---

[3] Defendants City, MAI, Mitsunaga Fujii, Deputy Prosecutor Delaplane and Investigator Branco argue that the Court should disregard or strike pursuant to LR 11.1 Plaintiff's oppositions because they were filed on July 2, 2025 instead of the due date of July 1, 2025.  (Dkt. No. 145 at 2; Dkt. No. 147 at 2-3; Dkt. No. 148 at 2; Dkt. No. 150 at 2; Dkt. No. 149 at 2.)  The docket shows that Plaintiff filed her oppositions late on July 2, 2025, and did not seek leave to file them late.  LR 11.1 provides that "[f]ailure of counsel . . . to comply with any provision of the Local Rules is a ground for imposition of appropriate sanctions, including a fine or dismissal.  Sanctions may be imposed by the court sua sponte consistent with applicable law."  LR 11.1.  A review of the docket history shows that Plaintiff filed seven oppositions shortly after 12:00 a.m. on July 2, 2025 with the first document filed at 12:05 a.m.  Because Plaintiff had to file seven separate oppositions and recognizing it takes time to upload documents, the Court declines to strike Plaintiff's oppositions for being filed minutes after midnight.

kept money that should have gone to MAI, used company resources, and allegedly exposed MAI to claims. (*Id.* ¶¶ 27, 66.)

**A.    Acts and Omissions Related to the Conspiracy**

In July 2012, Fujii, an employee of MAI, submitted a police report relating to Mau. (*Id.* ¶¶ 31, 86.)  Thereafter, in September 2012, Otani, a MAI employee, emailed Ann Kobayashi requesting a meeting with Prosecutor Kaneshiro. (*Id.* ¶¶ 12, 29.)  Around September 28, 2012, Carol Nakamura ("Nakamura"), Prosecutor Kaneshiro's executive assistant, emailed Otani that Prosecutor Kaneshiro would be happy to meet with Mitsunaga and also requested more information. (*Id.* ¶ 30.)  Otani responded around October 1, 2012, and identified the Fujii police report on Mau that Fujii had submitted in July 2012. (*Id.* ¶ 31.)  The police had tried to follow up with Fujii about the police report but was unable to obtain further information from him; nonetheless, Fujii's conduct was part of the conspiracy to involve the police "in an insubstantial way." (*Id.*)

Around October 4, 2012, Mitsunaga and Tanaka, MAI's attorney, met with Prosecutor Kaneshiro and Nakamura in order to attempt to persuade Prosecutor Kaneshiro to investigate and prosecute Mau. (*Id.* ¶ 32.)  On or about October 18, 2012, Tanaka sent Nakamura an email stating she was assembling the information requested by Prosecutor Kaneshiro, including the evidence supporting the police complaint. (*Id.* ¶ 33.)

On or about October 25, 2012, Mitsunaga, his spouse, Mitsunaga's business associates, Fujii and Tanaka made monetary contributions to Prosecutor Kaneshiro's reelection campaign. (*Id.* ¶ 34.)  Between October 2012 and October 2016, Mitsunaga and other employees of MAI, affiliates, sub-contractors, and relatives ("MAI Donors") contributed over $45,000 to Prosecutor Kaneshiro's re-election campaign. (*Id.* ¶ 35.) Prior to the contributions made in October 2012, these MAI Donors had no known contributions to Prosecutor Kaneshiro. (*Id.*)

On or about October 29, 2012, when Nakamura emailed Otani stating that Prosecutor Kaneshiro wanted to speak with Mitsunaga, Otani provided Mitsunaga's

cellular phone number, and on that same day Prosecutor Kaneshiro called Mitsunaga. (*Id.* ¶ 36.)

### 1. Deputy Prosecutor Van Marter Investigation

Upon information and belief, by around early November 2012, Prosecutor Kaneshiro agreed to use the Department of the Prosecuting Attorney ("DPA") to pursue felony criminal charges against Mau, thereby joining the conspiracy. (*Id.* ¶ 37.) In late 2012, Prosecutor Kaneshiro instructed his media spokesperson Darren Koga ("Koga") to direct the head of the white-collar crime unit Christopher Van Marter ("Van Marter") to prosecute Mau for theft, with Koga falsely telling Van Marter that Mau had admitted to the theft. (*Id.* ¶¶ 38, 39.) When Van Marter asked if there was a police investigation, Koga replied in the negative. (*Id.* ¶ 40.) Koga explained to Van Marter that the purported victim of the theft was involved in a civil action with Mau, as a defendant, and that the civil attorney for MAI had investigated the purported theft. (*Id.* ¶ 40.) Van Marter refused to charge Mau without a police investigation. (*Id.* ¶ 41.)

### 2. Deputy Prosecutor Nadamoto Investigation

In response to Van Marter's refusal to prosecute Mau, Prosecutor Kaneshiro then selected another senior deputy prosecuting attorney, Dwight Nadamoto ("Deputy Prosecutor Nadamoto") and Investigator Kalfred Wong ("Investigator Wong") to lead an internal investigation into the basis of criminal charges against Mau. (*Id.* ¶ 42.) The selection of Deputy Prosecutor Nadamoto and Investigator Wong was not conducted pursuant to the normal procedure of case assignments in the DPA, which usually followed a chain of command in assigning cases to deputy prosecuting attorneys. (*Id.*) In assigning the Mau case to selected deputy prosecutors, Prosecutor Kaneshiro was able to keep control over the Mau file, and to avoid a police investigation into facts and circumstances raised by Mitsunaga, Otani, and Tanaka, and to confine the investigation to information presented by them within the DPA. (*Id.* ¶ 43.) Around January 22, 2013, Tanaka provided a document to Deputy Prosecutor Nadamoto addressing criminal charges against Mau. (*Id.* ¶ 44.)

Meanwhile, on or about January 24, 2013, Mitsunaga, Tanaka, Prosecutor Kaneshiro, and Nakamura met for lunch and discussed the investigation and prosecution of Mau. (*Id.* ¶ 45.) A few days later, Tanaka sent Nakamura an email expressing her happiness that Prosecutor Kaneshiro and Nakamura could join them for lunch. (*Id.* ¶ 46.)

Around February 20, 2013, Tanaka sent Nakamura an email informing that she would be meeting with the police on February 21, 2013, and that Tanaka would provide a supplemental report to Prosecutor Kaneshiro by February 27, 2013. (*Id.* ¶ 47.) On or about February 27, 2013, Tanaka provided Deputy Prosecutor Nadamoto with another letter regarding criminal charges against Mau. (*Id.* ¶ 48.)

Deputy Prosecutor Nadamoto and Investigator Wong's investigation resulted in a 14-page memorandum to Prosecutor Kaneshiro ("Nadamoto Memo") explaining why criminal charges should not be brought against Mau. (*Id.* ¶ 56.) Among other things, the Nadamoto memorandum explained that there could be no theft as to the money earned by Mau from any side jobs because the money was not owed to MAI and there was no evidence of how much time Mau spent on side jobs. (*Id.* ¶ 125.) According to Deputy Prosecutor Nadamoto, when Tanaka learned of his analysis and conclusions, Tanaka was not pleased; yet, the conspiracy continued to move forward. (*Id.* ¶ 57.)

### 3.    Deputy Prosecutor Delaplane Investigation

In response to Deputy Prosecutor Nadamoto's conclusion and analysis as to why criminal charges were not warranted against Mau, Prosecutor Kaneshiro selected Deputy Prosecutor Delaplane, who had only recently joined the DPA, to bring criminal charges against Mau. (*Id.* ¶ 62.) Prosecutor Kaneshiro directed Deputy Prosecutor Delaplane to work with Tanaka to investigate the factual bases for criminal charges. (*Id.* ¶ 63.)

The FAC alleges that in July 2014, during the 2012 Employment Civil Action, Tanaka suborned the perjured testimony from Alivado falsely accusing Mau of theft. (*Id.* ¶ 58.) Around August 28, 2014, Tanaka emailed Deputy Prosecutor Delaplane about Mau, attaching transcripts from the trial of the 2012 Civil Employment Action. (*Id.* ¶ 64.) In late September 2014, or early October 2014, Tanaka met with Deputy Prosecutor

Delaplane, possibly with Otani, about Mau.  (*Id.* ¶ 65.)  On or about October 23, 2014, Tanaka emailed Deputy Prosecutor Delaplane and, upon information and belief, falsely alleged that Mau had kept money from Alivado which should have gone to MAI.  (*Id.* ¶ 66.)  As part of the investigation, Tanaka provided Deputy Prosecutor Delaplane with false sworn statements of McDonald and Otani regarding the purported theft allegedly committed by Mau.  (*Id.* ¶ 66.)

The perjured testimony of Alivado was not revealed until 2024 during the federal criminal trial in *United States v. Prosecutor Kaneshiro et al.,* Case No. CR 22-00048-JMS-WRP, United States District Court for the District of Hawaii, ("2022 Federal Criminal Case"), when Alivado admitted that he gave perjured testimony in the 2012 Employment Civil Action at Tanaka's request because he had wanted to help his friend Mitsunaga.  (*Id.* ¶ 58.)  By agreeing to and giving perjured testimony during the trial of the 2012 Employment Civil Action, Alivado made himself a part of the conspiracy to retaliate and injure Mau and to corrupt and thwart the exercise of her federal rights.  (*Id.* ¶ 59.)

Deputy Prosecutor Delaplane stated that he was not aware at the time of the internal investigation that Mau had sued MAI in a civil action and that monetary contributions to Prosecutor Kaneshiro's campaign were made by the MAI Donors.  (*Id.* ¶¶ 67-68.)  Deputy Prosecutor Delaplane asserted that had he been aware of these two facts at that time, he would have advised Prosecutor Kaneshiro that the DPA should recuse itself from any investigation and prosecution of Mau.  (*Id.* ¶ 69.)  Thus, Prosecutor Kaneshiro withheld material information from Deputy Prosecutor Delaplane during the internal investigation of the factual bases of criminal charges against Mau, and manipulated the internal investigation to make it more likely that Deputy Prosecutor Delaplane would pursue criminal charges against Mau.  (*Id.* ¶ 70.)

Deputy Prosecutor Delaplane conducted an internal investigation based on the belief that Mau was a career criminal even though she did not satisfy the definition of a career criminal.  (*Id.* ¶ 71.)  He relied primarily on materials and information provided to

him by Tanaka. (*Id.* ¶ 72.) He did not use any investigator in the DPA, and did not involve the police in the investigation. (*Id.*) He did not interview Alivado whose perjured testimony in the 2012 Employment Civil Action was material to the criminal charges that Deputy Prosecutor Delaplane would bring against Mau. (*Id.* ¶ 73.) In late November 2014, Deputy Prosecutor Delaplane attempted to have a state court judge sign off on an information charging Mau with felonies, but the judge refused to sign the information because it lacked the support of a law enforcement affidavit. (*Id.* ¶ 74.) When Deputy Prosecutor Delaplane reported the rejection of the information to Prosecutor Kaneshiro, he assigned Investigator Branco to cure the deficiency in the information. (*Id.* ¶ 75.) Investigator Branco did not conduct an investigation and did not interview Alivado. (*Id.* ¶ 76.) Instead, Investigator Branco sat with Deputy Prosecutor Delaplane while he prepared a statement for Investigator Branco to sign. (*Id.*) On or about December 1, 2014, Investigator Branco signed a sworn statement in support of a felony information that he had conducted an investigation in order to cure the deficiency identified by the state court judge. (*Id.*)

### 4. State Prosecution of Mau

On December 1, 2014, Deputy Prosecutor Delaplane filed a felony information supported by Branco's declaration against Mau in the Circuit Court for the First Circuit, State of Hawaii, alleging four counts of second-degree theft under Hawaii law ("2014 State Criminal Case"). (*Id.* ¶¶ 76, 77.) Mau was arraigned on the felony information, and conditions of release were set pending trial, including travel restrictions and a $20,000 cash bond. (*Id.* ¶ 78.)

While the charges were pending, in January 2016, Mau was offered a job with the Naval Facilities Engineering Systems Command ("NAVFAC") in Monterey, California. (*Id.* ¶ 80.) However, when NAVFAC learned of the criminal prosecution, the job offer was rescinded. (*Id.*)

The FAC claims that Kaneshiro and the DPA had a *Brady* duty to disclose all

exculpatory evidence to Mau prior to 2017. (*Id.* ¶ 124.) The 14-page Nadamoto Memo explaining that Mau had not committed any crime was never disclosed to Mau during her criminal trial and she did not learn of its existence until the indictment in the 2022 Federal Criminal Case was unsealed on June 17, 2022. (*Id.* ¶¶ 125, 129, 141, 142.) The Nadamoto Memo observed that there was no evidence about how much time Mau spent on side jobs, that the time she spent on emails for any side jobs was negligible and there was no theft as to the money earned by Mau for side jobs because that money was not owed to MAI. (*Id*. ¶ 125.) The Nadamoto Memo was sent to Kaneshiro and discussed around March or June 2014. (*Id.* ¶¶ 126, 141.) Mau became aware of another investigative interview and report around late September 2013 which was also not a part of the *Brady* materials but since Mau learned about it, she litigated to obtain the investigator's reports. (*Id.* ¶¶ 130, 131.) The Nadamoto Memo was improperly concealed by Kaneshiro in order to bring criminal charges against Mau. (*Id*. ¶ 135.) Mau alleges that Kaneshiro and the City fraudulently concealed the Nadamoto Memo and other exculpatory material facts about the conspiracy until she learned about them on June 17, 2022. (*Id.* ¶ 142.) Therefore, she claims that equitable tolling or equitable estoppel should toll the statute of limitation for the § 1983 cause of action against the City. (*Id.* ¶ 143.)

On May 26, 2017, Mau filed a motion to dismiss the state felony information. (Dkt. No. 125-2, Tanaka's RJN, Ex. B at 3-29.) On September 15, 2017, the state court granted the motion and dismissed the criminal case with prejudice based on the lack of probable cause. (Dkt. No. 119, FAC ¶ 81.)

### 5.    2012 Employment Civil Action

The FAC alleges that MAI was the defendant in the 2012 Employment Civil Action brought by Mau. (*Id.* ¶ 103.) Mitsunaga was the sole owner of MAI and Tanaka was MAI's attorney in the 2012 Employment Civil Action. (*Id.* ¶¶ 104, 105.) Mitsunaga directed and approved Tanaka in the conduct of MAI's defense in the civil action. (*Id.* ¶ 106.) Around late September 2013, Mau became aware that an investigator from the

DPA was interviewing persons about her alleged "side work" and therefore, around December 16, 2013, Mau served written discovery requests in the 2012 Employment Civil Action to MAI to "disclose documents and information provided to the Department of the Prosecuting Attorney." (*Id.* ¶¶ 49, 52, 108.) But MAI, through Tanaka and at the direction of Mitsunaga, refused to produce the documents that would have disclosed communications between MAI, Mitsunaga, Tanaka, and Otani, on the one hand, and Kaneshiro, on the other hand. (*Id.* ¶¶ 53,109.) Rather, MAI told Mau to obtain the requested documents from the DPA, but MAI, Tanaka and Mitsunaga knew that the DPA would not disclose the documents during the on-going investigation of Mau. (*Id.* ¶ 111.) On March 11, 2014, Tanaka communicated with Kaneshiro to coordinate a plan to keep these communications between MAI, Tanaka, Mitsunaga, and Otani, on the one hand, and Kaneshiro and Nakamura, on the other hand, from being disclosed. (*Id.* ¶ 112.) A discovery hearing in the 2012 Employment Civil Action was held on April 18, 2014 regarding MAI's refusal to produce the requested documents. (*Id.* ¶ 113.) At the court hearing, MAI represented that it had already produced all documents requested. (*Id.* ¶ 114.) Yet, the court ordered MAI to re-produce those documents. (*Id.* ¶ 116.) MAI subsequently re-produced the documents it had previously disclosed but did not include emails sent by MAI and its agents to Kaneshiro, through Nakamura. (*Id.* ¶ 117.) According to Mau, she relied on MAI's representations made to the court on April 18, 2014. (*Id.* ¶¶ 118, 119.) If MAI, through Tanaka, and acting with the knowledge and approval and direction of Mitsunaga, had disclosed the communications from MAI and its agents to Kaneshiro and Nakamura from late 2012 to April 2014, she would have sought further information and discovery which would have exposed the conspiracy. (*Id.* ¶ 120.) Instead, Mau claims she did not learn about the misrepresentations made at the April 18, 2014 court hearing until the indictment in the 2022 Federal Criminal Case was unsealed on June 17, 2022. (*Id.* ¶ 121.) Therefore, she claims that equitable tolling or equitable estoppel should toll the statute of limitation for the § 1983 cause of action against MAI, Mitsunaga, and Tanaka. (*Id.* ¶¶ 122, 123.)

1

### 6.    False Reports of Tax Fraud

Around August 7, 2014, as part of the conspiracy to deprive Mau of her constitutional rights, Otani emailed a complaint to the Tax Division of the Hawaii Attorney General's Office falsely alleging that Mau had committed tax fraud.  (*Id.* ¶ 60.) Mau was investigated by the Tax Division, but there was no adverse action.  (*Id.* ¶ 61.)

### B.    Federal Indictment of MAI and City Defendants

On June 17, 2022, a federal indictment in the 2022 Federal Criminal Case was unsealed.  (*Id.* ¶ 18.)  In that case, the United States brought a criminal case against Defendants Prosecutor Kaneshiro, Mitsunaga, Otani, Fujii, McDonald and Tanaka for conspiracy to commit honest services wire fraud, conspiracy to commit a federal program bribery, and a conspiracy to injure, oppress, threaten and intimidate Mau in the free exercise and enjoyment of her constitutional rights, including the right to be free from unreasonable seizures under the Fourth and Fourteenth Amendment and the right to file a federal civil action under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act.  (*Id.* ¶¶ 18-20.)

Mau alleges she did not learn the facts supporting her causes of action until June 17, 2022 when the indictment was unsealed.  She alleges that, at that time, she learned about the facts regarding the conspiracy scheme that "illuminated the context of events" from the summer of 2012 through December 2014.  (*Id.* ¶ 23.)

## LEGAL STANDARDS

### A.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).  Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief."  Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations but it must provide allegations that raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted). When dismissal is appropriate, leave to amend should generally be given freely. *Id.* However, if the plaintiff's proposed amendment would fail to cure the pleading's deficiencies and amendment would be futile, the court may dismiss without leave. *Id*.

**B.    Legal Standard on Motion to Dismiss Based on Statute of Limitations**

On a Rule 12(b)(6) motion, a court may dismiss on the ground that it is barred by the applicable statute of limitations only when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (citations omitted). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the

claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995). Further, "dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *accord*, *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980).

## DISCUSSION

### A.    Requests for Judicial Notice

Defendant Tanaka filed a request for judicial notice of the (1) transcript of the April 17, 2014 discovery hearing in the 2012 Employment Civil Action, *Mau v. Mitsunaga & Assocs. Inc*., Civil Case No. 12-468 DKW-BMW (D. Haw.) and (2) motion to dismiss felony information filed on May 26, 2017 in the 2014 State Criminal Case against Mau in *State of Hawaii v. Laurel J. Mau*, Circuit Court of the First Circuit of the State of Hawaii, Case No. 14-1-1873.  (Dkt. No. 125 at 3-4.[4])  Defendants Deputy Prosecutor Delaplane and Investigator Branco also seek judicial notice of the motion to dismiss felony information filed in the 2014 State Criminal Case against Mau.[5]  (Dkt. No. 153-1 at 8 n.2; Dkt. No. 154-1 at 8 n. 2.)  Plaintiff did not oppose.

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Further, the court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Courts may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct

---

[4] Page numbers are based on the CM/ECF pagination.
[5] Defendant City filed the motion to dismiss felony information as an attachment to its counsel's declaration.  (Dkt. No. 127-2; 127-3.)

relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir 2002)); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").  Courts may also take judicial notice of transcripts of other court proceedings.  *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1039 n. 2 (9th Cir. 2007) (taking judicial notice of oral argument transcript); *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1064 n.2 (E.D. Cal. 2013) (taking judicial notice of copies of transcript from a hearing as it was directly related to the proceedings).  Because the transcript of the discovery hearing in the 2012 Employment Civil Act and the motion to dismiss felony indictment are related to the allegations in the FAC, the Court GRANTS Defendants Tanaka, Deputy Prosecutor Delaplane and Investigator Branco's requests for judicial notice.

## B.    Statute of Limitations

Defendants MAI, Tanaka, Mitsunaga, and the City move to dismiss the 42 U.S.C. § 1983 and malicious prosecution claims in the FAC under the statute of limitations. (Dkt. Nos. 122 at 20-25; 124 at 13-20; 126 at 13-21; 127-1 at 2-3.)  Delaplane and Branco move to dismiss the malicious prosecution claim.[6]  (Dkt. Nos. 128 at 7-9; 129 at 7-8.)  The moving Defendants argue that the first and second causes of action are barred by the statute of limitations because Plaintiff has not sufficiently alleged that she is

---

[6] At the hearing, when asked to identify the Defendants in each cause of action, Plaintiff asserted that all Defendants are named in all three causes of action.  Yet, Defendants Deputy Prosecutor Delaplane and Investigator Branco point out that the first and third causes of action do not make specific allegations against them in those sections of the FAC.  (Dkt. No. 154-1 at 4-5; Dkt. No. 153-1 at 4-5.)  Because Plaintiff is granted leave to amend, she must clarify the named defendants in each cause of action. Further, to the extent individual City Defendants are named in the second amended complaint, Plaintiff must specify whether she is suing them in their official or individual capacities.  At the hearing, Plaintiff acknowledged that suing Deputy Prosecutor Delaplane and Investigator Branco in their official capacities would be duplicative of the *Monell* claim and was agreeable to dismissing them in their official capacities.

entitled to equitable tolling or fraudulent concealment.  In opposition, Plaintiff relies on equitable estoppel/fraudulent concealment to support her tolling theory.  (Dkt. No. 138 at 7-10; Dkt. No. 139 at 11-13; Dkt. No. 143 at 8-11.)

1.      **First Cause of Action - 42 U.S.C. § 1983 Conspiracy to Deny Constitutional Rights**

In their papers, the moving Defendants, as before, characterize the § 1983 cause of action as one confined to a conspiracy to maliciously prosecute Mau in violation of the Fourth and Fourteenth Amendments. (Dkt. Nos. 122 at 20-25; Dkt. No. 124 at 13-20; Dkt. No. 126 at 13-21; Dkt. No. 127-1 at 2-3.)  As amended, the first cause of action of the FAC alleges a conspiracy to maliciously prosecute Mau, but now includes allegations that the prosecution withheld exculpatory evidence and was supported by suborned perjury in violation of the Fourth and Fourteenth Amendments.  (Dkt. No. 119, FAC ¶¶ 84-100, 103-20, 124-135, 141-42, 144-152, 163-164.)[7]  These allegations appear to have been added in support of Mau's equitable tolling position rather than in service of any additional and separate conspiracies.  Accordingly, the Court applies the tolling analysis to a single conspiracy to maliciously prosecute rather than entertain or evaluate any other conspiracies.

a.      **Accrual and Discovery Rules**

As discussed in the prior order, § 1983 cases are governed by the forum state's statute of limitations for personal injury cases, here, Hawaii's two-year statute of

---

[7] The FAC alleges that the MAI Defendants retaliated against Mau for filing a civil complaint based on the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act ("Title VII").  (Dkt. No. 119, FAC ¶ 25.)  However, the first cause of action in the FAC does not appear to clearly and directly state a conspiracy to injure Mau in retaliation for filing a Title VII action, and Mau's response and opposition to the original and current motions to dismiss does not clearly identify a retaliation conspiracy.  In her amended complaint, Mau will need to not only identify the defendants for each cause of action but also clearly identify the conspiracy alleged so that Defendants are on notice as to the precise claims that they are defending against.

limitations for personal injury cases. (Dkt. No. 117 at 19-20.) However, federal law determines when a civil rights claim accrues. *Bird v. Dep't of Human Servs*., 935 F.3d 738, 743 (9th Cir. 2019). An accrual analysis begins with identifying "the specific constitutional right" alleged to have been infringed. *Manuel v. City of Joliet, Ill*., 580 U.S. 357, 370 (2017). "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Manuel,* 580 U.S. at 370 (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)).

Meanwhile, the "discovery rule" is a doctrine that "delays accrual of a cause of action until the plaintiff has 'discovered' it" and operates "as an exception to the general limitations rule that a cause of action accrues once a plaintiff has a 'complete and present cause of action[.]'" *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 644 (2010). Generally, the "discovery rule" extends the accrual of the statute of limitations from the date the plaintiff has a "complete and present cause of action" to the date when plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Bird,* 935 F.3d at 743 (quoting *Knox*, 260 F.3d at 1013**).**

42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under *color of state law*." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138 (9th Cir. 2012) (emphasis added).

"To prove conspiracy . . . under § 1983, an agreement or meeting of minds to violate the [plaintiff's] constitutional rights must be shown." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989). The plaintiff "must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012); *Humphery v. City of San Diego*, No. 25-CV-

16

00813-DMS-KSC, 2025 WL 2231244, at *7 (S.D. Cal. Aug. 5, 2025). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Davis,* 901 F. Supp. 2d at 1217; *see also Allen v. Iranon*, 99 F. Supp. 2d 1216, 1238 (D. Haw. 1999) (quoting *United Steelworkers of America v. Phelps Dodge Corp*., 865 F.2d 1539, 1541 (1989)). A § 1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive a person of a constitutional right under color of state law. *See Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980).

In its prior order, the Court concluded that under *McDonough v. Smith*, 588 U.S. 109, 114 (2019), Mau's § 1983 malicious prosecution claim accrued on September 15, 2017 when the criminal charges against Mau were dismissed with prejudice. (Dkt. No. 117 at 21-22, 24.) Applying the two-year statute of limitations for personal injury cases in Hawaii, Haw. Rev. Stat. § 657-7, as governed by § 1983 cases, *Nance v. Ward,* 597 U.S. 159, 174 (2022), the malicious prosecution claim should have been filed by September 15, 2019.[8] (*Id.*) Since the claim was filed more than two years after it accrued, the Court concluded that Mau's malicious prosecution claim is barred by the statute of limitations unless equitable estoppel or equitable tolling applies. (*Id.* at 24-25.) Because Plaintiff had not explicitly alleged tolling in the complaint, Plaintiff was granted leave to amend. (Dkt. No. 117 at 25.)

/ / /

_____

[8] Left unaddressed in the prior motions to dismiss and the Court's Order was any discussion on the accrual of the conspiracy to maliciously prosecute cause of action versus the substantive malicious prosecution claim. A conspiracy claim accrues at the time of the last overt act. *See Grunewald v. United States*, 353 U.S. 391, 396-97 (1957) ("[W]here substantiation of a conspiracy charge requires proof of an overt act, it must be shown . . . that at least one overt act in furtherance of the conspiratorial agreement was performed within that period."); *United States v. Walker*, 653 F.2d 1343, 1347 (9th Cir. 1981) (the "statute of limitations starts to run on the date of the last overt act.") (citation and internal quotation marks omitted). In this case, it is alleged that the conspiracy to maliciously prosecute Mau continued through the time that the Hawaii state criminal court dismissed the prosecution finding that the charges lacked probable cause. (Dkt. No. 119, FAC ¶ 81.) Accordingly, the Court finds that the conspiracy claim, like the substantive claim, accrued on September 15, 2017.

### b.  Tolling of Statute of Limitations

In the FAC, Plaintiff alleges that fraudulent concealment by Defendants tolls the statute of limitations and makes the malicious prosecution conspiracy timely.  *See Easley v. Cnty. of El Dorado*, No. 2:08–cv–01432 MCE KJN PS, 2010 WL 4569137, at *10 (E.D. Cal. Nov 3, 2010), *aff'd*, 478 Fed. App'x 447 (9th Cir. 2012) (absent tolling, § 1983 conspiracy claim barred based on last overt act).  The § 1983 conspiracy alleges that private actors conspired with state actors to maliciously prosecute Mau.  (Dkt. No. 119, FAC ¶¶ 84-86.)

Tolling rules are governed by state law.  *Soto v. Sweetman*, 882 F.3d 865, 870-72 (9th Cir. 2018) (explaining that "[f]ederal courts in § 1983 actions apply the state statute of limitations from personal injury claims and borrow the state's tolling rules[]").  The two-year statute of limitations under Haw. Rev. Stat. § 657-7 is subject to tolling based on fraudulent concealment.  *See Chavez v. Deutsche Bank Nat'l Trust Co*., CIV. NO. 17-00446 LEK-RT, 2019 WL 2330885, at *14 (D. Haw. May 31, 2019) (applying tolling based on fraudulent concealment to § 657-7).

The Court begins its analysis by looking at the general principals of tolling.  The statute of limitations is subject to the equitable doctrines of tolling or estoppel.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  "Equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit."  *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990).

The Ninth Circuit has recognized that the caselaw on the application of equitable estoppel and equitable tolling is somewhat confusing and contradictory.  *Stitt*, 919 F.2d at 522; *see also Hidalgo v. Engle*, Case No. 2:20-cv-08406-RGK-PD, 2021 WL 4341123, at *4 n. 1 (C.D. Cal. Aug. 30, 2021) (noting unpublished Ninth Circuit panel decisions have "alternatively cited to federal law and state law when analyzing equitable estoppel in § 1983 action.") (citing cases).  Hawaii district courts have also alternated between applying federal and state law on equitable estoppel claims.  *Compare Andrews v. Cnty.*

*of Haw.*, Cv. No. 10–00749 DAE–KSC, 2012 WL 425167, at *6 (D. Haw. Feb. 9, 2012) (applying state common law equitable estoppel to § 1983 claim) with *Puana v. Kealoha*, 587 F. Supp. 3d 1035, 1057 (D. Haw. 2022) (applying federal equitable estoppel law in § 1983 case).

In Hawaii, state courts have adopted the "lulling" theory of equitable estoppel articulated by the Hawaii Supreme Court in *Mauian Hotel, Inc. v Maui Pineapple Co.*, 481 P.2d 310, 315 (Haw. 1971). *See Vidinha v. Miyaki*, 145 P.3d 879, 885 (Haw. App. 2006) (applying "lulling" theory in *Mauian Hotel* to equitable estoppel argument). Pursuant to this doctrine, "a defendant cannot avail [itself] of the bar of the statute of limitations, if it appears that [it] has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against [it]." *Mauian Hotel, Inc.*, 481 P.2d at 315 (quoting *Hornblower v. George Washington Univ.*, 31 App. D.C. 64, 75 (1908)); *see Water Comm'n of the Cnty. of Haw. v. Nat'l Am. Ins. Co.*, 930 F. Supp. 1411, 1420-21(D. Haw. 1996) (quoting *York Excavating Co. v. Employers Ins. of Wausau*, 834 F. Supp. 733, 739 (M.D. Pa. 1993) (applying Hawaii state law on equitable estoppel stating "[f]raudulent misrepresentations by a defendant or its agent toll the statute of limitations if the defendant, through fraud or concealment, causes the plaintiff to relax his or her vigilance or to deviate from the right of inquiry . . . In general, this requires that a defendant has done something amounting to an affirmative inducement to Plaintiff to delay bringing the action.")).

The parties have not cited, nor has the Court located any Hawaii caselaw applying fraudulent concealment to conspiracy cases. Because Hawaii law on equitable estoppel overlaps with concepts of equitable estoppel in other jurisdictions, the Court will look to federal caselaw for guidance in analyzing fraudulent concealment as a tolling mechanism in conspiracy cases.

"A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d

1055, 1060 (9th Cir. 2012).  To prevail, a plaintiff must allege (1) the defendant affirmatively misled her, (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to her claim; and (3) the plaintiff exercised diligence in trying to uncover the facts giving rise to the claim.  *Id.* (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 585 F.2d 499, 502 (9th Cir. 1988)).  The plaintiff has the burden of pleading and proving these elements and must plead with particularity the circumstances of the concealment and the facts supporting its due diligence.  *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978).  "[I]t is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators."  *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007).

### i.    Affirmative Act

"To avoid the bar of limitation by invoking the concept of fraudulent concealment, the plaintiff must allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief.  Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure."  *Rutledge*, 576 F.2d at 250.  The Ninth Circuit has concluded that allegations of a "secret conspiracy" are insufficient to show "affirmative acts" of concealment.  *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988).  However, "the combination of [] misleading, pretextual statements and the affirmative efforts taken to destroy evidence of the conspiracy or otherwise keep the conspiracies secret [] supported the respective plaintiffs' fraudulent concealment allegations."  *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1208 (N.D. Cal. 2015)

The FAC alleges that MAI, Mitsunaga and Tanaka failed to produce requested discovery documents during the 2012 Civil Employment Action that would have

disclosed communications between MAI, Matsunaga, Tanaka, and Otani, on the one hand, and Kaneshiro, on the other hand, from December 2013 through April 18, 2014. (Dkt. No. 119, FAC ¶¶ 108-120.)  Specifically, MAI, through Tanaka, provided a misleading and pretextual response to Plaintiff's request for documents and writings provided to the Prosecuting Attorney by claiming that the information must be sought from Prosecuting Kaneshiro knowing that he would not provide the information due to the pending criminal investigation and also due to the alleged conspiracy.  (*Id.* ¶¶ 52, 55, 108-112).  Further, the FAC alleges Tanaka misrepresented to the state court and Mau during the April 18, 2014 discovery hearing that MAI had already produced all documents it sent to the DPA.  (*Id.* ¶¶ 113-120.)

As to efforts to keep the communications secret, the FAC alleges that on March 11, 2014, Tanaka and Kaneshiro arrived at a plan to withhold these communications from Mau.  *See In re TFT-LCD (Flat Panel) Antitrust Litig*., 586 F. Supp. 2d 1109, 1119 (N.D. Cal. 2008) (pretextual explanations and efforts to ensure secrecy were affirmative acts of concealment).  Given the FAC allegations, the Court concludes that Plaintiff has sufficiently demonstrated an affirmative act by Tanaka to fraudulently conceal the existence of the conspiracy to deprive Mau of her constitutional rights.

Defendant Tanaka and Plaintiff dispute whether allegations of fraudulent concealment as to one defendant can be applied to the other defendants under a conspiracy theory.  (Dkt. No. 124 at 14; Dkt. No. 139 at 13.)  In the case of a conspiracy claim, a plaintiff is not required to allege specific acts of fraudulent concealment as to each coconspirator Defendant.  Instead, a plaintiff must only make specific factual allegations as to each Defendant with respect to their participation in the alleged conspiracy.  *See In re Animation Workers Antitrust Litig*., 123 F. Supp. 3d at 1207 (applying fundamental principles of conspiracy law that a coconspirator is liable for fraudulent concealment of other members of the conspiracy in furtherance of the conspiracy).

Here, the FAC makes specific allegations as to each Defendant with respect to their participation in the alleged conspiracy, as follows:

As to Prosecutor Kaneshiro, Plaintiff alleges he oversaw the filing of charges lacking in probable cause and withheld discovery of the Nadamoto memorandum which explained why criminal charges should not be filed again Mau.  (Dkt. No. 119, FAC ¶¶ 38-41, 42-44, 56, 62-63, 125.)

As to Deputy Prosecutor Delaplane and Investigator Branco, they are alleged to have submitted a false declaration to a judicial officer in support of the criminal information charging Plaintiff.   (*Id*. ¶¶ 72-76.)

As to Defendant Otani, the FAC claims she set up meetings to plan the malicious prosecution of Plaintiff, (*id*. ¶¶ 28, 29, 54); and emailed a complaint to the Tax Division of Hawaii Attorney General falsely alleging Mau had committed tax fraud.  (*Id*. ¶¶ 60, 61.)

As to Defendants Tanaka, Mitsunaga, and MAI, Plaintiff alleges they suborned the perjury of Alivado, concealed his testimony, and withheld documents and information regarding efforts to prosecute Plaintiff.  (*Id*. ¶¶ 52, 53, 55, 58 108-119, 146.)

Finally, as to Alivado, it is alleged he admitted he provided false testimony in the 2012 Employment Civil Act and concealed his false and perjured testimony.  (*Id*. ¶¶ 59, 144, 145, 147.)

In light of these factual allegations, the Court concludes that the sufficient allegations of acts of fraudulent concealment discussed above apply to all of these coconspirator Defendants because these alleged acts were made in furtherance of a conspiracy to maliciously prosecute Mau.

## ii.    Actual or Constructive Knowledge

"The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to the discovery of the fraud." *Hexcel Corp*., 681 F.3d at 1060 (*citing Beneficial Standard Life Ins., Co. v. Madariaga*, 851 F.2d 271, 274-75 (9th Cir. 1988)).  It is enough that the

plaintiff "should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim." *Conmar*, 858 F.2d at 502.  Typically, whether a plaintiff has constructive knowledge of her claim is a question of fact for the jury.  *In re Cathode Ray Tube Antitrust Litig*., Case No. C-07-5944 JST, 2016 WL 8669891, at *5 (N.D. Cal. Aug. 22, 2016).  To plead tolling based on fraudulent concealment, Plaintiff must allege that Defendants fraudulently concealed the existence of these conspiracies.  *See E.W. French & Sons, Inc. v. Gen. Portland, Inc.,* 885 F.2d 1392, 1400 (9th Cir. 1989) ("[t]he existence of the lawsuit and French's knowledge of it, however, are not tantamount to actual or constructive knowledge of the price-fixing claim.").

Here, Plaintiff learned that Kaneshiro and Delaplane had filed charges that lacked probable cause no later than November 2017 and therefore had actual knowledge of the malicious prosecution claim at that time.  However, Plaintiff alleges that she lacked actual or constructive knowledge of the existence of a conspiracy to deny her constitutional rights by, among other things, maliciously prosecuting her because crucial evidence of the conspiracy was concealed or withheld.  For example, the FAC alleges that Defendants MAI, Mitsunaga and Tanaka suborned the perjury of Defendant Alivado in July 2014 during the trial of the 2012 Civil Employment Action which was later relied upon to advance the state prosecution and Mau did not learn about his perjured testimony and concealed facts surrounding the perjury until 2024, or no earlier than June 17, 2022 when the federal indictment was unsealed.  (Dkt. No. 119, FAC ¶¶ 58, 146-51.)  Also, Plaintiff claims the prosecution in her 2014 State Criminal Case failed to disclose the 14-page Nadamoto Memo explaining that Mau had not committed any crime and did not learn of its existence until the federal indictment was unsealed in 2022.  (*Id.* ¶¶ 125, 129, 141, 142.)

As to her knowledge of a conspiracy to maliciously prosecute her, Plaintiff was actually or constructively aware of Tanaka's role in assembling and delivering declarations in support of the prosecution.  (Dkt. No. 125-2, Tanaka's RJN, Ex. B at 27).  The declarations included those of McDonald and Fujii.  (Dkt. No. 119, FAC  ¶¶ 31 66.)

However, as with the now-dismissed Defendants McDonald and Fujii, merely providing declarations in support of prosecution does not make the affiant a state actor for purposes of a § 1983 claim or conspiracy. *See Rivera v. Green*, 775 F.2d 1381, 1382–84 (9th Cir. 1985), *cert. denied*, 475 U.S. 1128 (1986) (merely complaining to the police does not convert a private party into a state actor); *O'Handley v. Weber*, 62 F.4th 1145, 1160 (9th Cir. 2023) (consultation and information sharing, or presenting a report required by law to a state official does not rise to the level of joint action). In addition, it appears that Plaintiff may have known that Mitsunaga had made contributions to the Kaneshiro's reelection campaign and that Kaneshiro employed suspect and out of the ordinary investigative procedures. However, Mau alleges that she lacked actual or constructive knowledge of the conspiracy to maliciously prosecute her until she learned that multiple prosecutors had rejected charges and that Tanaka had suborned perjury to support the charges. Viewing these facts with the required liberality and recognizing that constructive knowledge of a claim is a question of fact for the jury, the Court cannot conclude that Mau will be unable to prove that the statute of limitations was tolled. *See TwoRivers*, 174 F.3d at 991 ("Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."); a*ccord, Jablon,* 614 F.2d at 682.

### iii.    Plaintiff's Diligence

Here, the FAC alleges Mau was diligent by raising the issue regarding the production of the discovery documents to the court in the 2014 Employment Civil Action. (Dkt. No. 119, FAC ¶ 52.) Therefore, even with her diligence, she could not have discovered facts underlying the § 1983 conspiracy at that time due to MAI, Mitsunaga and Tanaka's pretextual reasons for refusing to produce the documents. *See In re Cathode Ray Tube*, 2016 WL 8669891, at *17 ("Further, even if the report had raised Sharp's suspicions, Defendants do not show that a diligent inquiry, had it been performed, would have revealed the facts underlying the Sharp's claims.")

Therefore, Mau has alleged the elements to support tolling due to fraudulent concealment.  Because Defendants' conduct lulled Mau into inaction until the indictment in the 2022 Federal Criminal Case was unsealed on June 17, 2022, Plaintiff's complaint alleging a § 1983 conspiracy claim filed on June 14, 2024 is timely.  Accordingly, the Court DENIES Defendants MAI, Mitsunaga, Tanaka and the City's motions to dismiss the § 1983 conspiracy to maliciously prosecute Mau.

### 2.    Second Cause of Action – Malicious Prosecution

The second cause of action alleges a malicious prosecution claim.  (Dkt. No. 119, FAC ¶¶ 155-175.)  Defendants MAI, Mitsunaga, Tanaka and the City argue that the second cause of action should be dismissed as untimely based on the same reasons as the § 1983 cause of action.  (Dkt. No. 127-1 at 2; Dkt. No. 122 at 20; Dkt. No. 126 at 21-22; Dkt. No. 124 at 21.)  Deputy Delaplane and Investigator Branco also argue that the claim is barred by the statute limitations.  (Dkt. No. 152-1 at 7-8; Dkt. No. 153-1 at 7-9.)  Plaintiff opposes.  (Dkt. Nos. 138, 139, 143, 137, 140, 141.)

While there is no statute or caselaw that expresses the statute of limitations for a Hawaii state law malicious prosecution claim, the Court applies the same two-year statute of limitations applicable to the § 1983 cause of action for personal injury claims because malicious prosecution is an injury to Mau, as a person.  *See* H.R.S. § 657-7 ("[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued.").  The Court applies the same accrual rule as with the § 1983 cause of action where it previously found that the malicious prosecution claim is time barred because the claims accrued on September 15, 2017 when the criminal charges against Mau were dismissed with prejudice, and the two year statute of limitations expired on September 15, 2019.  (*See* Dkt. No. 117 at 21-22, 24.)  The next question is whether equitable estoppel/fraudulent concealment applies on this cause of action to toll the statute of limitations.

Here, unlike the first cause of action, the second cause of action for malicious prosecution is not one involving a conspiracy with multiple defendants and multiple acts

in furtherance of a conspiracy.  Therefore, the material question on this claim is whether Plaintiff had actual or constructive knowledge of her malicious prosecution claim.

A malicious prosecution claim under Hawaii law has the following elements: (1) the prior proceeding was initiated without probable cause; (2) the prior proceeding was initiated with malice; and (3) the prior proceeding was terminated in the plaintiff's favor. *Young v. Allstate Ins. Co.*, 198 P.3d 666, 680 (Haw. 2008).  To establish malice, a plaintiff must show that the prosecutor initiated the prior proceedings with the intent, without justification or excuse, to misuse the criminal justice system as a means for causing harm.  *Arquette v. State of Haw.*, 290 P.3d 493, 507 (Haw. 2012).

The facts alleged show that Mau was aware of the facts to support the malicious prosecution claim when she filed her motion to dismiss the felony indictment on May 26, 2017.  (Dkt. No. 125-2, Tanaka's RJN, Ex. B at 2-29.)  Therefore, when her criminal charges were dismissed for lack of probable cause on September 15, 2017, Plaintiff had actual knowledge that the prior proceeding was terminated in her favor and that it was initiated without probable cause.  She also had constructive knowledge that the criminal case against her was initiated with malice as her motion to dismiss pointed out the prosecutor's failure to investigate her case with an independent law enforcement agency and there was no grand jury and preliminary hearing to establish probable cause.  Mau also knew the prosecution relied on information supplied by Tanaka, MAI's attorney, who was defending MAI in the underlying employment civil case.  Further, Mau was aware that MAI was a campaign contributor to Prosecutor Kaneshiro, and MAI/Tanaka and the DPA had a close and highly suspect relationship.  These assertions raised by Mau on May 26, 2017 reveal she was alerted to facts to support the element of malice. Accordingly, because Mau had actual or constructive knowledge of her malicious prosecution cause of action in 2017, she has failed to plausibly allege fraudulent concealment to support tolling of the statute of limitations on the malicious prosecution claim.  Thus, the Court GRANTS Defendants MAI, Mitsunaga, Tanaka, the City, Deputy

Prosecutor Delaplane and Investigator Branco's motions to dismiss the second cause of action as time barred.

**C.      First Cause of Action – City's *Monell* Liability**

The City argues that Plaintiff has not sufficiently alleged *Monell* liability against it. (Dkt. No. 127-1 at 5-6.)  Plaintiff disagrees.  (Dkt. No. 137 at 9-13.)  The Court concludes that the *Monell* claim sufficiently alleges that Kaneshiro was a final policy-maker who established City policy to prosecute Mau.

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983.  *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).  On a *Monell* theory of final policy-making authority, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986) (footnote and citation omitted).  Under the facts of *Pembaur*, the Court found that a county prosecutor possessed final policymaking authority to direct deputy sheriffs to forcibly enter the plaintiff's clinic to serve two writ capiases. When plaintiff barred deputy sheriffs from entering his clinic, the deputies requested instruction from their supervisors who referred the issue to the county prosecutor.  *Id.* at 484-85.  The Court explained that a single decision by a municipal policymaker subjects the municipality to liability in certain circumstances because "even a single decision . . . unquestionably constitutes an act of official government policy." *Pembaur*, 474 U.S. at 480 ("*Monell* 's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' [ ] and whose decisions therefore may give rise to municipal liability under § 1983."). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur,* 475 U.S. at 482. "Authority to make municipal policy may be granted directly by a legislative enactment

1    or may be delegated by an official who possesses such authority, and of course, whether

2    an official had final policymaking authority is a question of state law." *Id.* at 483.

3            In Hawaii, the county's prosecuting attorney has final policymaking authority to

4    prosecute someone. *McGuire v. Cnty. of Haw.*, 567 P.3d 180, 182 (Haw. 2025);

5    *Marsland v. First Hawaiian Bank*, 764 P.2d 1228 (Haw. 1988) (County prosecutors have

6    been delegated "primary authority and responsibility for initiating and conducting

7    criminal prosecutions within their respective county jurisdictions.").

8            Here, Plaintiff has sufficiently alleged the elements of *Monell* liability based on

9    Kaneshiro's final policy-making authority to prosecute Mau. (Dkt. No. 119, FAC ¶¶ 93-

10   101.) Specifically, she claims the City's policy was to bring false criminal charges to

11   prosecute her and Prosecutor Kaneshiro established this policy and was also the final

12   policy-making authority. (*Id.* ¶¶ 94-96.) In sum, she alleges that "Kaneshiro was the

13   final policy-maker of the City who established City policy with regard to the prosecution

14   of Mau." (*Id.* ¶ 100.) Accordingly, the Court DENIES the City's motion to dismiss the

15   first claim for failure to state a claim.

16   **D.    Third Cause of Action - Fraudulent Concealment**

17           The third cause of action alleges a fraudulent concealment cause of action against

18   Defendants MAI, Mitsunaga and Tanaka for concealing discovery responses in the 2012

19   Employment Civil Action, coaching Defendant Alivado to provide false testimony in the

20   same action, and concealing his false testimony. (Dkt. No. 119, FAC ¶¶ 176-203.)

21   According to Mau, if they had disclosed the discovery responses and Alivado provided

22   truthful testimony, these facts would have changed the outcome of her civil trial. (*Id.* ¶

23   214.) MAI moves to dismiss the third cause of action for fraudulent concealment under

24   Rule 9(b) arguing that the claim lacks specificity and fails to adequately define a duty.

25   (Dkt. No. 122 at 28.)

26           In Hawaii, a claim for fraudulent concealment is a form of fraud and assessed

27   under the four elements of fraud. *Pac. Stock, Inc. v. Pearson Educ., Inc.,* 927 F. Supp. 2d

28   991, 1003-04 (D. Haw. Feb. 26, 2013) ("Fraudulent concealment is just a form of fraud.")

(citing *Tachibana v. Colo. Mountain Dev., Inc*., No. 07–CV–00364, 2011 WL 1327113, *3 n. 7 (D. Haw. Apr. 5, 2011) ("We interpret the reference to 'fraudulent concealment' as simply a means of clarifying for Defendants that the type of fraud alleged includes fraud by omission and concealment, and not just affirmative conduct.")); *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010) (treating a fraudulent concealment claim as fraud based on alleged failures to disclose information); *Associated Eng'rs & Contractors, Inc. v. State of Haw.*, 567 P.2d 397, 418 (Haw. 1977) (citation omitted) ("Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another.").

"To prevail on a fraud claim, a plaintiff must demonstrate (1) that false representations were made by the defendant, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon them, and (4) that the plaintiff detrimentally relied on them." *Pac. Stock*, 927 F. Supp. 2d at 1003-04 (citing *Hawaii's Thousand Friends v. Anderson*, 768 P.2d 1293, 1301 (Haw. 1989)). "An action based on fraud will not lie where plaintiff has suffered no injury or damage." *Larsen v. Pacesetter Sys., Inc*., 837 P.2d 1273, 1288 (Haw. 1992). In Hawaii, fraud can be perpetrated by non-disclosure as well as by affirmative misrepresentation. *See Santiago v. Tanaka*, 366 P.3d 612, 624 (Haw. 2016) (citation omitted) (addressing business transaction). A defendant may be liable for fraudulent concealment when it fails to disclose a fact that it knows may cause a plaintiff to act or refrain from acting and it had a duty to "exercise reasonable care to disclose that fact." *Tel. Events & Mktg., Inc. v. Amcon Distrib. Co*., 488 F. Supp. 2d 1071, 1081 (D. Haw. 2006) (quoting Restatement (Second) Torts § 551(1) (1976)).

Where fraud is alleged, the pleading requirements of Rule 9(b) apply to the claim. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged

generally." Fed. R. Civ. P. 9(b). Accordingly, "[t]o satisfy Rule 9(b), the plaintiff must include 'the who, what, when, where, and how' of the fraud." *Vess*, 317 F.3d at 1106 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). However, on an omission claim, it "'can succeed without the same level of specificity required by a normal fraud claim' . . . because, in a pure omissions case, a plaintiff 'will not be able to specific the time, place, and specific content of an omission as would a plaintiff in a[n affirmative] false representation claim.'" *Anderson v. Apple Inc*., 500 F. Supp. 3d 993, 1018 (N.D. Cal. 2020) (citations omitted).

Here, fraudulent concealment claim concerns MAI, Mitsunaga and Tanaka's conduct in the underlying 2012 Employment Civil Action. First, Mau alleges that MAI had a duty to disclose written communications with the DPA in response to her discovery request during the 2012 Employment Civil Action but instead concealed such information which deprived her of evidence of retaliation and a cover up in that case. (Dkt. No. 119, FAC ¶¶ 52-53, 177-89.) Second, she alleges that MAI, and Tanaka had a duty to conduct the underlying 2012 Employment Civil Action in good faith and abide by procedural and substantive law in presenting truthful evidence but coached Alivado to provide perjured testimony and concealed the perjured testimony during the civil action and beyond which deprived her of evidence of retaliation and would have changed the outcome of the civil trial. (*Id.* ¶¶ 201-03, 211, 214.)

MAI argues that Plaintiff has failed to allege fraudulent concealment as to MAI and a mere claim of a "duty" owed by a defendant to a plaintiff is insufficient to allege specificity for fraud.[9] (Dkt. No. 122 at 28.) The Court disagrees. Plaintiff has pled specificity as to the conduct by Defendants in the underlying 2012 Employment Action.

---

[9] MAI also relies on the Court's prior dismissing the allegations supporting fraudulent concealment but it improperly reads too much into the Court's prior ruling where it concluded the allegations did not sufficiently allege the elements of fraud to support a fraudulent concealment claim. (Dkt. No. 117 at 28-29.) The Court did not conclude that these acts by MAI could never allege a fraud claim but only that Mau had failed to sufficiently allege fraud by failing to allege the elements of a fraud claim. (*Id.* at 28.)

First, there is a general duty to disclose under the Federal Rules of Civil Procedure. *See Green v. Kanazawa*, CIVIL NO. 16-00054LEK-KSC, CIVIL NO. 16-00055LEK-KSC, 2018 WL 6671578, at *3 (D. Haw. Apr. 23, 2018) ("Rule 26 governs discovery and the duty to disclose.").  Second, Plaintiff has provided specificity as to the who, MAI, Mitsunaga and Tanaka; the what, failure to comply with their duty to respond to discovery requests; the when and where, during the 2012 Employment Civil Action; and the how, by concealing and pretextually telling her to obtain the documents from the DPA, and misrepresenting that the discovery responses had been produced.  (Dkt. No. 119, FAC ¶¶ 52-53, 177-89.)  As to Alivado's perjury, Mau has alleged the who, MAI, Mitsunaga and Tanaka; the what, perjury of Alivado; the when and where, during the 2012 Employment Civil Action; and the how, by coaching and suborning the perjury of Alivado, and concealing it.  (*Id.* ¶¶ 201-03, 211, 214.)  Thus, Plaintiff has complied with the specificity requirements of Rule 9(b).

### 1.    Third Cause of Action – Alter Ego Liability

Next, MAI, on behalf of Mitsunaga argues that Plaintiff has not sufficiently alleged alter ego liability to pierce the corporate veil and allege personal liability against Mitsunaga.  (Dkt. No. 122 at 28-30.)  Plaintiff maintains that Mitsunaga should not be allowed to hide behind the corporate shield.  (Dkt. No. 143 at 9.)

In Hawaii, the "general rule is that a corporation and its shareholders are to be treated as distinct legal entities" but the "corporate 'veil' will be pierced and the legal entity of the corporation will be disregarded only where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." *Chung v. Animal Clinic, Inc*., 696 P.2d 721, 723 (Haw. 1981); *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co*., 982 P.2d 853, 870 (1999), *superseded by statute on other grounds as recognized in Davis v. Four Seasons Hotel Ltd*., 228 P.3d 303, 308 n.9 (2010) (citations and quotation marks omitted).

Under Hawaiʻi law, "a court may 'pierce the corporate veil'- look past a corporation's formal existence to hold another entity or individual liable-when that entity or individual treats the corporation as his 'alter ego.'" *Lewis v. Lewis Elec., LLC*, Case No. 19-cv-527-DKW-KJM, 2021 WL 6113551, at *7 (D. Haw. Dec. 27, 2021), *on reconsideration in part*, 2022 WL 268985 (D. Haw. Jan. 28, 2022) (quoting *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co*., 982 P.2d 853, 869 (Haw. 1999), *superseded by statute on other grounds as noted in Davis v. Four Seasons Hotel Ltd*., 228 P.3d 303, 308 n.9 (Haw. 2010)). "[T]he alter ego doctrine does not create a separate cause of action, but rather, creates a means for an individual (the alter ego) to be held personally liable for a cause of action against a corporate entity." *Calipjo v. Purdy*, 439 P.3d 218, 234 (Haw. 2019).

The Hawaii Supreme Court has identified at least twenty-five factors to consider; while they are not exhaustive and no one factor is dispositive, the court must consider the totality of the circumstances. *Lewis*, 2021 WL 6113551, at *7 (citing *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.,* 982 P.2d 853, 869 (Haw. 1999)).[10]

---

[10]    The twenty-five factors are:

[1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the identical equitable ownership in the two entities; [6] the identification of the equitable owners thereof with the domination and control of the two entities; [7] identi[ty] of ... directors and officers of the two entities in the responsible supervision and management; [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] the use of the same office or business location; [10] the employment of the same employees and/or attorney; [11] the failure to adequately capitalize a corporation; [12] the total absence of corporate assets, and undercapitalization; [13] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [14] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; [15] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [16] the use of the corporate entity to procure labor, services or

Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that "[1] the corporation is not only influenced and governed by that person, but that there is such a unity of interest . . . that the individuality, or separateness, of such person and corporation has ceased, and [2] that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." *Robert's*, 982 P.2d at 871; *Jass v. CherryRoad Techs., Inc*., 449 F. Supp. 3d 923, 940 (D. Haw. 2020) (quoting *Calipjo v. Purdy*, 439 P.3d 218, 229 (Haw. 2019)); *see also Kane v. PaCap Aviation Fin*., LLC, Case No. CV 19-00574 JAO-RT, Case No. CV 20-00246 JAO-RT, 2024 WL 5485919, at *46 (D. Haw. Sept. 13, 2024). "The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or certain other exceptional circumstances." *Dole Food Cro. v. Patrickson*, 538 U.S. 468, 475 (2003).

Here, the FAC alleges that Mitsunaga is the sole owner of MAI and controlled the conduct of the corporation, including its conduct in the 2012 Employment Civil Action.

---

merchandise for another person or entity; [17] the diversion stockholder [sic] or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [18] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and [19] the formation and use of a corporation to transfer to it the existing liability of another person or entity.

*Robert's Haw. Sch. Bus*, 982 P.2d at 871 (citations and internal quotation marks omitted). Other factors to consider are:

(1) incorporation for the purpose of circumventing public policy or statutes; (2) whether the parent finances the subsidiary; (3) whether the subsidiary has no business or assets except those conveyed to it by the parent; (4) whether the parent uses the subsidiary's property as its own; (5) whether the directors of the subsidiary do not act independently in the interest of the corporation but take their orders from and serve the parent; and (6) whether the fiction of corporate entity . . . has been adopted or used to evade the provisions of a statute.

*Id*. (citations and internal quotation marks omitted).

(Dkt. No. 119, FAC ¶¶ 11, 104, 182.)  Sole ownership and control are not sufficient to allege an alter ego theory of liability.  *See Hillhouse v. Haw. Behavorial Health, LLC*, Civil No. 14–00155 LEK–BMK, 2014 WL 4662378, at *7 (D. Haw. Sept. 18, 2014) (dismissing claim for failing to plead alter ego standards as insufficiently pled where she alleged the individual defendant was the majority owner and current CEO and President of Defendant company and he was involved in some decisions and supervision regarding her employment); *Estacion v. Kaumana Drive Partners, LLC*, Civ. No. 19-cv-00255 JMS-KJM, 2019 WL 5295183, at *3 (D. Haw. Oct. 18, 2019) (granting motion to dismiss alter ego liability for failure to allege any facts giving rise to an inference to pierce the corporate veil.); *see also Katzir's Floor and Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143 (9th Cir. 2004) (applying California law) (mere fact of sole ownership and control does not eviscerate separate corporate identity).

Because the FAC fails to sufficiently allege alter ego liability to impose liability on the conduct of Defendant Mitsunaga, the Court GRANTS the motion to dismiss as to Mitsunaga with leave to amend.

**2.    Third Cause of Action – Absolute Litigation Privilege**

On behalf of Tanaka, MAI contends that Tanaka is protected by the absolute litigation privilege.  (Dkt. No. 122 at 28-30.)  Plaintiff disagrees.  (Dkt. No. 138 at 11.)

In Hawaii, the absolute litigation privilege applies to defamation and slander actions.  *Matsuura v. E.I. du Pont de Nemours and Co.,* 73 P.3d 687, 692 (Haw. 2003); *Isobe v. Sakatani*, 279 P.3d 33, 48 (2012) (applying absolute litigation privilege to slander claims).  However, "a party is not immune from liability for civil damages based upon that party's fraud engaged in during prior litigation proceedings."  *Matsuura,* 73 P.3d at 700; *Living Designs, Inc. v. E.I. Dupont de Nemours and Co*., 431 F.3d 353, 372 (9th Cir. 2005) (if a claim for fraud is asserted, "the litigation privilege does not protect subsequent litigation asserting other causes of action stemming from the fraud allegedly committed in prior proceedings[]") (citing *Matsuura*. 73 P.3d at 693-99).

Here, the FAC alleges a number of acts constituting fraudulent conduct as it concerns Tanaka including withholding documents in the 2012 Employment Civil Action, suborning and concealing the perjury of Alivado, and providing false documents to the DPA to initiate and facilitate the criminal prosecution of Mau. Therefore, Tanaka cannot rely on the absolute litigation privilege to shield her from liability due to alleged fraud.

According, in conclusion, the Court GRANTS in part and DENIES in part Defendants MAI, Mitsunaga and Tanaka's motions to dismiss the fraudulent concealment cause of action for failure to state a claim.[11]

**E.    Leave to Amend**

To the extent the Court deems it necessary, Plaintiff seeks leave to amend. (*See e.g.,* Dkt. No. 139 at 21.) Because it would not be futile to allow Plaintiff to amend the complaint, the Court GRANTS Plaintiff's request for leave to amend the first and third causes of action. *See Chubb*, 710 F.3d at 956.

## CONCLUSION

Based on the above, on the first cause of action, the Court DENIES Defendants MAI, Mitsunaga, Tanaka, and the City's motions to dismiss. On the second cause of action, the Court GRANTS Defendants MAI, Mitsunaga, Tanaka, City, Deputy Prosecutor Delaplane and Investigator Branco's motions to dismiss the second cause of action without leave to amend. On the third cause of action, the Court GRANTS MAI and Mitsunaga's motion to dismiss with leave to amend and DENIES Tanaka's motion to

_____

[11] Mitsunaga and Tanaka also argue that the fraudulent concealment claim is an impermissible collateral attack of the prior civil proceeding and the remedy for an alleged withholding of discovery or deprivation of a fair trial in a prior proceeding would have been filing a Federal Rule of Civil Procedure 60 motion in the 2012 Employment Civil Action. (Dkt. No. 124 at 25-26; Dkt. No. 126 at 25.) While discovery rules and Rule 60 is the usual method to seek relief from final judgment, it is not the only avenue and the Hawaii Supreme Court permits a party to seek relief in a subsequent action based on fraudulent conduct in prior litigation. *See Matsuura*, 73 P.3d at 700 ("Under Hawai'i law, a party is not immune from liability for civil damages based upon that party's fraud engaged in during prior litigation proceedings.").

1    dismiss.  Finally, the Court GRANTS Defendant McDonald and Fujii's motions to

2    dismiss with prejudice.  Plaintiff is granted leave to file a second amended complaint

3    with a redlined version on or before **October 31, 2025**.

4          IT IS SO ORDERED.

5    Dated:  October 7, 2025

6                                              Hon. Gonzalo P. Curiel
7                                              United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24cv0253-GPC(WRP)